53 P.3d 799

OKADA TRUCKING CO., LTD.,
Petitioner–Appellee–Petitioner–
Respondent,

v.

BOARD OF WATER SUPPLY, City and
County of Honolulu, Respondent–
Appellee–Respondent–Respondent,

and

Inter Island Environmental Services, Inc.,
Intervenor–Respondent–Appellant–
Respondent–Petitioner.

No. 22956.

Supreme Court of Hawai'i.

Aug. 29, 2002.

Darryl H.W. Johnston, David F.E. Banks, and Marc E. Rousseau (Cades, Schutte, Fleming & Wright), Honolulu, for the intervenor-respondent-appellant-respondent-petitioner Inter Island Environmental Services, Inc., on the application for a writ of certiorari and on the supplemental brief.

Kelvin H. Kaneshiro and Dennis E.W. O'Connor, Honolulu, for the petitioner-appellee-petitioner-respondent Okada Trucking Co., Ltd., in response to the supplemental brief.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by LEVINSON, J.

We granted the application for a writ of certiorari filed by the intervenor-respondent-appellant-respondent-petitioner Inter Island Environmental Services, Inc. (now known as Inter Island Construction, Inc.) [hereinafter, "Inter Island"] in order to review the order of the Intermediate Court of Appeals (ICA) dismissing Inter Island's appeal in *Okada Trucking Co., Inc. v. Board of Water Supply*, No. 22956 (Haw. Ct. App.2002) [hereinafter, the "ICA's order"]. The ICA's order dismissed Inter Island's appeal as moot on the basis that "Okada Trucking ha[d] already completed performance of its contract with [the Board of Water Supply (BWS) ] to construct and install the Kaluanui Booster Station, Phase II and that the remedies sought by Inter Island when it sought judicial relief [could] no longer be provided." ICA's order at 1. As discussed more fully *infra* in section III, we hold that Inter Island's appeal falls within an exception to the mootness doctrine, because it involves a matter of public concern and is capable of repetition yet evading review. Accordingly, we

vacate the ICA's order and remand this matter to the ICA for consideration of the points of error raised by Inter Island in its appeal from the hearings officer's decision, as instructed in our prior decision in this matter, *Okada Trucking Co., Ltd. v. Board of Water Supply*, 97 Hawai'i 450, 40 P.3d 73 (2002) [hereinafter, "*Okada I* "].

## I. BACKGROUND

The present matter involves a dispute over the interpretation of the Hawai'i Public Procurement Code, Hawai'i Revised Statutes (HRS) ch. 103D (1993 & Supp.2001),[1] and its application to the award of a procurement contract by the BWS.[2] In May 1999, the BWS issued an invitation for bids (IFB) for a project involving the construction of the Kaluanui Booster Station, Phase II [hereinafter, "the project"]. The project involved some work that required a plumber who held a C–37 specialty contracting license. The IFB expressly provided, pursuant to HRS § 103D–302(b) (Supp.2001),[3] that any general contractor who bid for the project was re-

---

1. The Procurement Code applies "to all procurement contracts made by governmental bodies[.]" HRS § 103D–102(a) (Supp.2001). HRS § 103D–104 (Supp.2001) defines "governmental body" to include "any department, commission, council, board, bureau, authority, committee, institution, legislative body, agency, government corporation or other establishment or office of the executive, legislative, or judicial branch of the State ... and the several counties of the State." HRS ch. 103D provides for review of the BWS's award of the construction contract by an administrative hearings officer and for judicial review of the hearings officer's decision. Pursuant to HRS § 103D–701 (Supp.2001), "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation." HRS § 103D–709(a) (1993) provides in relevant part that a "hearings officer ... shall have jurisdiction to review and determine *de novo* any request from any bidder, offeror, contractor or governmental body aggrieved by a determination of the chief procurement officer[.]" Pursuant to HRS § 103D–709(b) (1993), the hearings officer "shall have the power to ... find facts, make conclusions of law, and issue a written decision[,] which shall be final and conclusive unless a person or governmental body adversely affected by the decision commences an appeal in the supreme court under [HRS § ] 103D–710 [ (1993 & Supp.2000) ]." (The legislature amended HRS

§§ 103D–709(b) and 103D–710 in 2001 to provide for an appeal to "the circuit court in the circuit where the case or controversy arises[.]" 2001 Haw. Sess. L. Act 251, §§ 2 and 3 at 648–49.) HRS § 103D–710(a) (Supp.2001) provides that "[o]nly parties to proceedings under [HRS § ] 103D–709 who are aggrieved by a final decision of a hearings officer under that section may apply for judicial review of that decision."

2. The factual background giving rise to Inter Island's appeal, which we briefly summarize *infra*, is set forth in detail in *Okada I*.

3. HRS § 103D–302(b) provides:

An invitation for bids shall be issued, and shall include a purchase description and all contractual terms and conditions applicable to the procurement. If the invitation for bids is for construction, it shall specify that all bids include the name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract and the nature and scope of the work to be performed by each. Construction bids that do not comply with this requirement may be accepted if acceptance is in the best interest of the State and the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one per cent of the total bid amount.

quired to disclose the names of, as well as the nature and scope of work to be undertaken by, any joint contractor or subcontractor, but that, "where the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one percent of the total bid amount, the listing of the joint contractor or subcontractor may be waived if it is in the best interest of [the] BWS."

The BWS opened bids for the project on June 10, 1999 and determined that Inter Island had submitted the lowest bid, but that it had not disclosed, *inter alia*, the name of and the nature and scope of any work to be performed by a C–37 licensed plumbing subcontractor.[4] The BWS contacted Inter Island regarding its omission and Inter Island explained that it "did not list subcontractors for the plumbing and installation of the pumps as their quotes were considerably below 1%[,] or $13,500.[00,]" of its bid. In support of its contention, Inter Island produced an estimate that it had received from a subcontractor to perform the work that required the use of a C–37 licensed plumber, which was, in fact, less than one percent of Inter Island's bid. The subcontractor's estimate bore the date of June 22, 1999, which was twelve days after the "bid-opening" date of June 10, 1999. The BWS notified Inter Island on July 28, 1999 that it had been awarded the contract for the project.

On August 4, 1999, Okada Trucking, which had submitted the second lowest bid for the project, filed a protest of the BWS's award of the contract with the BWS's chief procurement officer (CPO), pursuant to HRS § 103D–701, *see supra* note 1. Okada argued that the contract for the project should not have been awarded to Inter Island because, *inter alia*, Inter Island had not disclosed the name of or the nature and scope of work to be performed by the C–37 licensed subcon-

tractor it intended to use, in contravention of HRS § 103D–302(b), *see supra* note 3, and it was not in the BWS's best interest to waive the statutory requirement. The CPO denied Okada Trucking's protest, reasoning that it was within the BWS's discretion to waive the disclosure requirement in the event that, as Inter Island had verified, the work to be performed by the unnamed subcontractor was less than one percent of Inter Island's bid.

On September 10, 1999, Okada requested administrative review of the BWS's denial of its protest, pursuant to HRS § 103D–709, *see supra* note 1. By stipulation, Inter Island was allowed to intervene in the administrative proceedings. The hearings officer determined that, while Inter Island was obligated to identify all the subcontractors that it would engage in order to complete the project, the BWS could waive "the non-responsive aspects of [Inter Island's] bid, pursuant to HRS § 103D–302(b), *see supra* note 3, and Hawai'i Administrative Rules (HAR) § 3–122–21(a)(8) (1997),[5] if it determined that "acceptance [of the bid] would be in [its] best interest[.]" Nevertheless, the hearings officer concluded that the IFB's requirement that each prospective bidder "must be capable of performing the work for which the bids [were] being" invited "subsume[d a requirement that] the bidder, at the time of bid submission and no later than bid opening date, was ready and able to perform the work required on the construction project if awarded the contract." Thus, because Inter Island failed to have a duly licensed plumbing subcontractor "lined up" and "contractually bound to perform" its delegated responsibilities at the time of bid-opening, the hearings officer found that Inter Island "was not a responsible bidder." While the hearings officer acknowledged

---

4. Apparently, Inter Island did not possess a C–37 specialty contracting license; none of the parties have suggested otherwise.

5. HAR § 3–122–21(a)(8) provides:
   For construction projects the bidder shall provide:
   (A) The name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract; and

(B) The nature and scope of the work to be performed by each.
   Construction bids that do not comply with the above requirements may be accepted if acceptance is in the best interest of the State and the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one percent of the total bid amount.

that the BWS could waive the requirement that a bidder list each of its subcontractors and the nature and scope of their work, if the value of the unlisted subcontractor's work was less than one percent of the total project contract amount, he ruled that the BWS could not waive the requirement that a bidder have all of its subcontractors "lined-up" and "contractually bound to perform" its delegated responsibilities prior to bid-opening. Therefore, the hearings officer believed that the BWS had violated "provisions of the Procurement Code" by allowing Inter Island "to rectify its failure by obtaining a plumbing subcontractor *after* bid opening." (Emphasis in original.) Consequently, the hearings officer concluded that it was not in the BWS's or the public's best interests to have waived the disclosure requirement. Accordingly, the hearings officer terminated the contract between the BWS and Inter Island and awarded Inter Island compensation for any actual expenses it had reasonably incurred under the contract. Subsequently, the BWS awarded the contract for the project to Okada.

On November 18, 1999, Inter Island appealed to this court for judicial review of the hearings officer's decision, pursuant to HRS § 103D–710, *see supra* note 1. Inter Island challenged the hearings officer's determinations that it had submitted a non-responsive bid, that it was not a responsible bidder, and that it was not in the BWS's best interest to waive the disclosure requirement with regard to Inter Island's failure to identify a duly licensed plumbing subcontractor. More specifically, Inter Island contended that the hearings officer erred in determining that "it was unlawful under the Procurement Code for . . . the BWS to determine that it was in its best interest to waive the subcontractor listing requirement and allow Inter Island to obtain a written commitment from a plumbing subcontractor after bid opening." We assigned the matter to the ICA pursuant to HRS § 602–5(8) (1993) and Hawai'i Rules of Appellate Procedure (HRAP) Rule 31(a) (2000).

The ICA, however, did not address Inter Island's points of error on appeal. Rather, the ICA held, *sua sponte*, that the hearings officer erred in determining that the project required Inter Island to subcontract, *inter alia*, any plumbing specialty work involved in the project. *Okada Trucking Co., Ltd. v. Board of Water Supply*, 97 Hawai'i 544, 562, 40 P.3d 946, 964 (App.2001). The ICA further held that Inter Island "was authorized to undertake the [p]roject with its own staff,[ ] provided, of course that where certain work required performance by individuals with particular licenses, Inter Island utilized employees who were appropriately licensed to perform such work." *Id.* at 564, 40 P.3d at 966. Accordingly, the ICA vacated the hearings officer's decision. *Id.* at 568, 40 P.3d at 970. The ICA did not terminate Okada's contract with the BWS, however, based on the parties' representations that Okada had been performing on the contract for several months. *Id.* at 567–68, 40 P.3d at 969–70. The ICA held that it would not be in either the BWS's or the public's best interest to terminate the contract at this stage. *Id.*

On May 18, 2001, Okada applied to this court for a writ of certiorari to review the ICA's opinion. In its application, Okada argued that the ICA erred in its conclusions (1) that the project did not involve some specialty work requiring the use of a duly licensed plumbing subcontractor and (2) that Inter Island was not required to list a duly licensed plumbing subcontractor in its bid for the project contract.

On January 28, 2002, we vacated the ICA's opinion and held, in relevant part, that, pursuant to HRS § 444–9 (1993),[6] "a general engineering or building contractor is prohibited from undertaking *any* work, solely or as part of a larger project, that would require it to act as a specialty contractor in an area in which the general contractor was not licensed to operate." *Okada I*, 97 Hawai'i at 462, 40 P.3d at 85 (emphasis in original). Accordingly, we further held that Inter Is-

---

**6.** HRS § 444–9 provides that "[n]o person within the purview of this chapter shall act, or assume to act, or advertise, as general engineering contractor, general building contractor, or specialty contractor without a license previously obtained under and in compliance with this chapter and the rules and regulations of the contractors license board."

land "would need to obtain a subcontractor duly licensed in the C–37 plumbing classifications to undertake [the] work [required] to complete the project." *Id.* However, because the ICA had failed to address the central issue presented in Inter Island's appeal—*i.e.,* whether a contract bidder was required to "line-up" all of its subcontractors prior to bid-opening—we remanded the matter to the ICA in order for it to address Inter Island's points of error on appeal in the first instance.

On remand, the ICA requested supplemental memoranda from the parties discussing:

(1) [w]hether Okada Trucking has completed performance of the contract; (2)[i]f the contract has been completed, whether any of the remedies sought by Inter Island can be provided at this time; and (3)[w]hy this appeal is not moot.

Inter Island responded to the ICA's request by explaining that it had "no direct knowledge of the status of Okada Trucking's performance of the Kaluanui Booster Station contract[.]" Nevertheless, Inter Island asserted that remedies were still available in the event that the contract had already been completed. Specifically, Inter Island argued that, if successful in its challenge to the hearings officer's decision, it might be entitled to costs associated with its appeal pursuant to HRAP Rule 39.

In addition, Inter Island contended that, even if there were no remedies available, the present matter fell into an exception to the mootness doctrine set forth in *Life of the Land v. Burns,* 59 Haw. 244, 580 P.2d 405 (1978). According to Inter Island, the present matter qualified for the exception because it involved a question of public concern—*i.e.,* the interpretation of the Hawai'i Procurement Code, which governs the expenditure of public tax revenues, by public entities, for the public's benefit—and the hearings officer's error was likely to be repeated, yet evade appellate review, because the performance of a procurement contract is likely to be completed before a final, appellate decision on the merits can be reached.

Okada represented that it had already completed performance of its contract with the BWS to construct and install the Kaluanui Booster Station. Therefore, according to

Okada, "[t]here is no remedy which Inter[ ]Island could obtain at this juncture" and "[t]he question to be determined is abstract[.]" Okada did not address Inter Island's contention that the present matter constituted an exception to the mootness doctrine.

On April 29, 2002, the ICA issued the order dismissing Inter Island's appeal on the bases that: (1) "Okada Trucking has already completed performance of its contract with [the BWS]"; (2) "the remedies sought by Inter Island when it sought judicial relief can no longer be provided"; and, consequently, (3) this appeal is moot[.]" The ICA did not address Inter Island's arguments (1) that effective remedies were still available or (2) that the present matter falls within an exception to the mootness doctrine.

On May 21, 2002, Inter Island filed a timely application for a writ of certiorari or, in the alternative, a writ of mandamus, for this court to review the ICA's order.

## II. *STANDARDS OF REVIEW*

Pursuant to HRS § 602–59(b) (1993), our review of a decision of the ICA is limited, *inter alia,* to "grave errors of law or fact," which are of such a "magnitude" as to "dictat[e] the need for further appeal." *See, e.g., In re Jane Doe, Born On June 20, 1995,* 95 Hawai'i 183, 189, 20 P.3d 616, 622 (2001).

## III. *DISCUSSION*

In its application, Inter Island argues that the present matter "meets the exception to the mootness doctrine[,] because it affects the public interest and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made." We agree.

■ It is established in Hawai'i that

[a] case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where "events ... have so affected the relations between the parties that the two

conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised."

*CARL Corp. v. State, Dept. of Educ.*, 93 Hawai'i 155, 164, 997 P.2d 567, 576 (2000) [hereinafter, *"CARL II"*] (quoting *In re Application of Thomas*, 73 Haw. 223, 226, 832 P.2d 253, 254 (1992) (quoting *Wong v. Board of Regents, University of Hawai'i*, 62 Haw. 391, 394, 616 P.2d 201, 203–04 (1980))).

For example, in *CARL II*, 93 Hawai'i at 165, 997 P.2d at 577, which, like the present matter, arose from a challenge to a governmental body's award of a procurement contract, we held that the hearings officer had correctly dismissed the unsuccessful bidder's appeal as moot because the contract at issue had been terminated. Consequently, Carl, the party challenging the award of the contract to another bidder, had received the only relief available to it pursuant to the Procurement Code (*i.e.*, termination of the contract) and, as a result, the hearings officer was no longer in a position to decide whether to terminate or affirm the contract.

Similarly, in *Wong*, 62 Haw. at 396, 616 P.2d at 205, we held that Wong's appeal was moot because "there [was] nothing left to grant [the] appellant." *Wong*, a University of Hawai'i student at the time he instituted his lawsuit, sought (1) to enjoin a disciplinary hearing against him and (2) a declaratory judgment that the university's statement and procedures regulating student conduct were invalid, on the basis that they did not comply with the Hawai'i Administrative Procedure Act (HAPA). *Id.* at 391, 616 P.2d at 202. The circuit court granted summary judgment in favor of the university and Wong appealed to this court. During the pendency of Wong's appeal, however, the university (1) agreed to terminate its disciplinary proceedings against Wong and (2) complied with HAPA. *Id.* at 394, 616 P.2d at 203. In addition, Wong graduated from the university. *Id.* at 396, 616 P.2d at 205. Accordingly, there was no longer either an adverse inter-

est or an effective remedy available in the lawsuit.

■ Likewise, in the present matter, Inter Island's appeal is moot because the contract has already been completed. Thus, the only remedy available to Inter Island pursuant to the Procurement Code—termination of the project contract—is no longer available. Inter Island argues that its appeal is not moot because it could be awarded reimbursement of the costs that it has incurred in the instant appeal, pursuant to this court's holding in *In re CARL v. State, Dept. of Educ.*, 85 Hawai'i 431, 458, 946 P.2d 1, 28 (1997) [hereinafter, *"CARL I"*].[7] In *CARL I*, this court held that

> a protestor is entitled to recover its attorney's fees if: (1) the protestor has proven that the solicitation was in violation of the Code; (2) the contract was awarded in violation of HRS § 103D–701(f); and (3) the award of the contract was in bad faith.

*Id.* at 460 946 P.2d at 30. Inter Island does not suggest, however, that any of the foregoing conditions have been met, and we decline to extend the holding of *CARL I* in the present matter.

■ Nevertheless, we have repeatedly recognized an exception to the mootness doctrine in cases involving questions that affect the public interest and are "capable of repetition yet evading review." *CARL II*, 93 Hawai'i at 165, 997 P.2d at 577 (quoting *In re Thomas*, 73 Hawai'i 223, 226, 832 P.2d 253, 255 (1992)); *accord Mahiai v. Suwa*, 69 Haw. 349, 356, 742 P.2d 359, 365 (1987); *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987); *Wong*, 62 Haw. at 395–96, 616 P.2d at 204; *Life of the Land v. Burns*, 59 Haw. 244, 252, 580 P.2d 405, 409–10 (1978); *Johnston v. Ing*, 50 Haw. 379, 381, 441 P.2d 138, 140 (1968). "Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future

---

7. Inter Island concedes that the legislature proscribed attorneys' fees as a remedy available to unsuccessful bidders in 1999, pursuant to HRS § 103D–707(1) (Supp.2001), but that *CARL I* still permits the award of other non-statutory remedies, such as costs, if the contract in dispute has already been awarded. Assuming *arguendo* that HRS § 103D–707(1), as amended, prohibits the award of attorney's fees, but not of costs, for the reasons discussed *infra*, *CARL I* is, nevertheless, unhelpful to Inter Island.

guidance of public officers, and the likelihood of future recurrence of the question." *Johnston,* 50 Haw. at 381, 441 P.2d at 140 (quoting *In re Brooks' Estate,* 32 Ill.2d 361, 205 N.E.2d 435, 437–438 (1965)).

> The phrase, "capable of repetition, yet evading review," means that "a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit."

*CARL II,* 93 Hawai'i at 165, 997 P.2d at 577 (quoting *Burns,* 59 Haw. at 251, 580 P.2d at 409–10). In *CARL II,* we noted that, while public procurement contracts "clearly involve[ ] matters of public concern," the subject controversy did not qualify for the exception to the mootness requirement because "no additional 'authoritative determination' [was] needed regarding the terminated contract[.]" *Id.* As pointed out *supra,* the governmental body had already granted Carl the relief that it requested by terminating the disputed contract. In addition, this court had already explained in *CARL I* precisely why the procurement process awarding the contract had been flawed. Consequently, there was no unsettled legal question for this court to address.

By contrast, in *Johnston,* we addressed one of the issues raised by the plaintiff in spite of the fact that the matter was moot. *Johnston* involved a dispute over an election ballot and the power of the circuit courts to prevent the use of "ballots not in conformity with the law and to compel officials to prepare and distribute proper ballots[.]" *Johnston,* 50 Haw. at 382, 441 P.2d at 140. We held that, although the election at issue had since passed, "the question [of the circuit courts' power to remedy defective ballots] affects the public interest, and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made[.]" *Id.,* at 381, 441 P.2d at 140. Consequently, this court held that the matter constituted an exception to the mootness doctrine.

We hold that the instant case falls within the foregoing exception to the mootness doctrine. First, the procurement of goods and services by governmental bodies "clearly involves matters of public concern." *CARL II,* 93 Hawai'i at 165, 997 P.2d at 577. The interpretation and application of the Procurement Code affects governmental bodies that solicit bids for public projects, contractors who submit bids, and the citizens of Hawai'i who pay for and benefit from such projects.

Second, the question in dispute—whether contractors are required to "line-up" all of their subcontractors prior to "bid-opening"— is implicated in every public procurement process. Consequently, the issue involved in the present matter is not only capable of repetition, but, without a doubt, will arise again in the future. Thus, unlike *CARL II,* in which the governmental body agreed to terminate the contract in dispute after we explained in *CARL I* why the contract had been awarded in violation of the Procurement Code, a real question of law remains unsettled in the present matter. Not only Inter Island, but every contractor that submits a bid for a public procurement contract in the future will be affected by the hearings officer's interpretation of the Procurement Code in the present matter.

Third, "the challenged governmental action [is likely to] evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit." *Thomas,* 73 Haw. at 226, 832 P.2d at 255 (quoting *Life of the Land,* 59 Haw. at 251, 580 P.2d at 410). The history of Inter Island's appeal amply demonstrates the point: it has been nearly four years since the hearings officer issued the decision challenged in the present matter, Okada has completed its work on the project, and yet there has still been no authoritative judicial decision regarding the important legal questions raised by Inter Island in its appeal. Moreover, the problem is likely to be more acute in the future due to the fact that parties appealing a hearing officer's decision must now first seek review in the

198

circuit court.[8] HRS §§ 103D–709 and 103D–710 (Supp.2001).

In sum, we hold that Inter Island's appeal falls within an exception to the mootness doctrine because it implicates a matter of public concern and the challenged action—the termination of Inter Island's contract on the basis that it did not have all of its subcontractors "lined-up" prior to bid-opening—is capable of repetition, yet likely to evade appellate review. Consequently, we hold that the ICA erred in dismissing Inter Island's appeal as moot.

## IV. CONCLUSION

In light of the foregoing, we vacate the ICA's order, issued on April 29, 2002, and remand this matter to the ICA with instructions to consider on the merits the points of error that Inter Island has raised on appeal.

8. While it is conceivable that the award of some procurement contracts will, due to the scale of the projects involved, be subject to appellate review before they are completed, the exception to the mootness requirement does not require absolute certainty that the issue will evade review; all that is required is that "it is *likely* in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made[.]" *Johnston,* 50 Haw. at 381, 441 P.2d at 140 (emphasis added).