**Electronically Filed
Supreme Court
SCWC-15-0000387
10-OCT-2016
07:58 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

_____

STATE OF HAWAIʻI, Respondent/Plaintiff-Appellee,

vs.

JOSEPH TUI, JR., Respondent/Defendant-Appellee,
DIRECTOR OF HEALTH, DEPARTMENT OF HEALTH, STATE OF HAWAIʻI,
Petitioner/Real Party-in-Interest-Respondent/Appellant.

_____

SCWC-15-0000387

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000387; CR. NOS. 13-1-0371 & 13-1-0556)

OCTOBER 10, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND POLLACK, JJ., AND
CIRCUIT JUDGE AYABE IN PLACE OF WILSON, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This case arises from a dispute regarding whether, under

Hawaiʻi Revised Statutes ("HRS") chapter 704,[1] custody of a

_____

[1] HRS Chapter 704 is titled "Penal Responsibility and Fitness to Proceed."

defendant deemed unfit to proceed due to mental disease or disorder[2] can be transferred from the Director of Health ("Director") to the Department of Public Safety ("DPS") before a judicial determination that the defendant has regained fitness. The Circuit Court of the First Circuit ("circuit court")[3] answered in the negative, and the Director appealed.  The day after the Director's appeal, the circuit court determined that the defendant, Joseph Tui, Jr. ("Tui"), was fit to proceed, and transferred his custody to the DPS.

The Intermediate Court of Appeals ("ICA") dismissed the appeal as moot, holding that it lacked appellate jurisdiction because custody of Tui had been already been transferred from the Director to the DPS.  According to the ICA, the "capable of repetition, yet evading review" exception to the mootness doctrine "d[id] not appear to apply" because the "Director ha[d] not shown that review of [the] adverse trial court decisions

---

[2]     HRS § 704-403 (2014), titled "Physical or mental disease, disorder, or defect excluding fitness to proceed," provides:

> No person who as a result of a physical or mental disease, disorder, or defect lacks capacity to understand the proceedings against the person or to assist in the person's own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures.

This case concerns issues of whether Tui was unfit to proceed due to mental disease or disorder.  All references in this opinion to "fitness," "unfitness," "fitness to proceed," and "unfitness to proceed" relate only to issues of fitness or unfitness due to mental disease or disorder, and not to any other basis on which a defendant might be found unfit to proceed.

[3]     The Honorable Richard K. Perkins presided.

could not be obtained through other means, such as a petition for writ of mandamus or prohibition."

Thus, this case presents the procedural question of whether the ICA erred in not considering the "capable of repetition, yet evading review" exception to the mootness doctrine on this basis.  We hold that because there is no requirement that "other means, such as a petition for writ of mandamus or prohibition" be pursued before an appellate court can consider whether the "capable of repetition, yet evading review" exception to the mootness doctrine applies, the ICA erred in not considering the exception.  We then consider whether the exception applies, and hold that it does.  As the ICA therefore erred in dismissing the appeal, we vacate the ICA's November 9, 2015 "Order Dismissing Appeal For Lack Of Appellate Jurisdiction" and remand the case to the ICA to address the remaining issues on appeal.

## II.  Background

### A.  Circuit Court Proceedings

Tui was charged with murdering his cell-mate while incarcerated at Oahu Correctional Community Center ("OCCC").  He was later also charged with assaulting a nurse during a prior hospitalization at the Hawaii State Hospital ("Hospital," "State Hospital," or "HSH").  On January 14, 2015, following a hearing,

Tui was found unfit to proceed pursuant to HRS § 704-404 (2014).[4] The proceedings against him were suspended until further order of the court, and Tui was committed to the custody of the Director pursuant to HRS § 704-406 (2014) "to be placed at the [] Hospital or an appropriate institution for detention, care, and treatment for so long as such unfitness shall endure."[5]

_____

[4]    As it stated at the relevant time, HRS § 704-404, titled "Examination of defendant with respect to physical or mental disease, disorder, or defect," provides in relevant part as follows:

> (1)  Whenever the defendant has filed a notice of intention to rely on the defense . . . or there is reason to doubt the defendant's fitness to proceed, . . . the court may immediately suspend all further proceedings in the prosecution. . . .

> (2)  Upon suspension of further proceedings in the prosecution, the court shall appoint three qualified examiners in felony cases . . . to examine and report upon the physical and mental condition of the defendant. . . . The examination may be conducted on an out-patient basis or, in the court's discretion, when necessary the court may order the defendant to be committed to a hospital or other suitable facility for the purpose of the examination[.]

[5]    HRS § 704-406, titled "Effect of finding of unfitness to proceed," provides in part as follows:

> (1)  If the court determines that the defendant lacks fitness to proceed, the proceeding against the defendant shall be suspended, . . . and the court shall commit the defendant to the custody of the director of health to be placed in an appropriate institution for detention, care, and treatment . . . .

> . . . .

> (3)  When the court, on its own motion or upon the application of the director of health, the prosecuting attorney, or the defendant, determines, after a hearing if a hearing is requested, that the defendant has regained fitness to proceed, the penal proceeding shall be resumed. . . .

> (4)  . . . Within a reasonable time following [] commitment under subsection (1), the director of health shall report to the court on whether the defendant presents

(continued . . .)

4

According to the Director, the Hospital was the only such "appropriate institution."

Twelve days later, on January 26, 2015, the Director filed a motion for an order finding that Tui had regained fitness. The Director also moved for a transfer of Tui's custody from the State Hospital to the DPS. In the motion, the Director asserted there was no clinical indication for Tui to remain in an inpatient hospital unit and that prolonging Tui's stay was endangering patients, staff, himself, and the community at large. In the alternative, the Director requested that another three-panel examination be ordered. The motion was supported by a letter to the court, dated January 23, 2015, from Dr. Allison Garrett ("Dr. Garrett"), Tui's attending psychiatrist at the State Hospital. Dr. Garrett's opinion was that Tui was fit, posed a danger to others, and had a high flight risk.[6]

At a hearing on February 5, 2015, the circuit court orally denied the State's request for a fitness finding and transfer,

---

(. . . continued)
　　　　　a substantial likelihood of becoming fit to proceed in the future. The court, in addition, may appoint a panel of three qualified examiners in felony cases . . . .

[6]　　　The letter from Dr. Garrett also detailed Tui's cooperative condition upon admission at HSH, the opinion of the mental health staff at OCCC that Tui's schizoaffective disorder was in remission, and that Tui was capable of planning and arranging for contraband to be brought in to facilitate an escape. Apparently, the night he was admitted to the Hospital, despite being disallowed from having visitors, Tui's sister, at his request, attempted to bring him a duffle bag of clothes that contained a concealed knife.

but ordered that Tui be re-examined.  The circuit court ordered that Tui remain at the Hospital pending a hearing on that re-examination.  The circuit court's order appointing three examiners to review Tui's fitness to proceed and penal responsibility was entered on March 5, 2015.[7]

On March 18, 2015, the Director filed a second motion for transfer of Tui's custody to the DPS.  The motion was supported by letter to the court dated March 17, 2015, from William J. May, the Hospital Administrator, indicating that a special Administrative Safety Plan had been implemented for Tui due to his violent behaviors and other events that occurred within hours of his admission to the State Hospital.[8]

The hearing on the Director's second motion to transfer Tui was held on March 30, 2015.  The Director argued that it was not

---

[7]   Parts of HRS chapter 704 have been amended by Act 198 of 2016 (see Act 198 of 2016, S.B. 2888, C.D. 1, §§ 3-4), effective July 1, 2016 ("Act 198"), and Act 231 of 2016 (see Act 231 of 2016, H.B. 2561, C.D. 1, §§ 4-6), effective July 11, 2016 ("Act 231").  In broad summary, Act 198 removes the provisions in HRS § 704-404 relating to penal responsibility examinations and inserts them in a new section, see Act 198, § 2, and retains provisions relating to fitness to proceed examinations, at issue here, in HRS § 704-404. Act 198 requires that, in felony cases, fitness to proceed examinations and penal responsibility examinations be conducted separately, unless the court orders otherwise.  Act 231 is the comprehensive Penal Code revision bill. With respect to HRS §§ 704-404 and -406, in broad summary, Act 231 temporarily eliminates (until July 1, 2018) the requirement that the Director of Health's designee to conduct fitness and penal responsibility examinations be "from within the Department of Health." Act 198 retains that limitation.

[8]   Regarding Tui's psychiatric stability, the March 17, 2015 letter provided updates from Tui's treatment team at the Hospital purporting to demonstrate his continued mental stability, including that his bipolar disorder was in remission and that Tui was on a stabilized medication regimen, and also included the results of a forensic evaluation.

necessary for Tui to remain at the Hospital.  She asserted that although the circuit court had earlier found Tui unfit, Tui could be still be transferred to OCCC because his fitness status was uncertain in light of the court's ordering of a three-panel re-examination.  The Director argued that the authority to order a three-panel re-examination also comes from HRS § 704-404 and that under that statute, a patient for whom a fitness examination has been ordered does not need to be at the Hospital, but can be held at OCCC.

Tui argued that the court should await the outcome of the three-panel re-examination.

The deputy prosecuting attorney then noted that it was the attorney general, representing the Director, that was filing the motion, and that the State of Hawaiʻi as prosecutor had "not seen this avenue being taken to get somebody that's still legally unfit back into the general population."  The prosecutor further stated that what the Director was requesting was "fraught with risks," and noted "that's why the State or the prosecutor's office is not joining in on this motion."

The circuit court then denied the motion, noting that Tui had already been found unfit and that the re-examination was therefore no longer an initial examination of fitness pursuant to HRS § 704-404.  The court ruled that pending a ruling that he had regained fitness, as an unfit person, Tui could not be held

at OCCC. The circuit court scheduled a hearing on Tui's three-panel re-examination report for May 7, 2015.

The order on the March 30, 2015 hearing did not enter until May 5, 2015. The next day, which was the day before the hearing on the re-examination, the Director appealed the circuit court's order denying Tui's transfer. After the May 7, 2015 hearing to review the report of the three examiners who had re-examined Tui's fitness to proceed, the circuit court found Tui fit to proceed and committed him to the custody of the DPS.

## B. Appeal to the ICA

In her Opening Brief to the ICA, the Director repeated the arguments she had made to the circuit court. She also argued that although Tui's custody had already been transferred to the DPS, the ICA has jurisdiction over the appeal because the custody status of a defendant pending re-examination of fitness falls under the "capable of repetition, yet evading review" exception to the mootness doctrine.[9]

Tui agreed with the Director's assertion that the ICA has jurisdiction over the appeal based on the "capable of repetition, yet evading review exception," and also reiterated his argument to the circuit court that a fitness finding was

---

[9] The Director's additional arguments as to why the ICA has jurisdiction are not included as they are not necessary to our opinion.

necessary before a defendant's custody can be transferred to the DPS.

On November 9, 2015, the ICA issued its "Order Dismissing Appeal For Lack Of Appellate Jurisdiction ("Order Dismissing Appeal)."  The Order Dismissing Appeal provides, in relevant part, as follows:

> Where a subsequent hearing and determination of fitness resulted in the circuit court ordering transfer of Tui to the Director of Public Safety on May 7, 2015-two days after the 5/5/15 Order Denying Motion for Transfer in Cr. 13-1-0375/13-1-0556 from which Director appeals-the remedy of transfer has already been accomplished, and the ICA cannot grant said relief.  Kaho'ohanohano v. State, 114 Hawai'i 302, 332, 162 P.3d 696, 726 (2007) ("a case is moot if the reviewing court can no longer grant effective relief"); State v. Fukusaku, 85 Hawai'i 462, 475, 946 P.2d 32, 45 (1997) ("[a] case is moot where the question to be determined is abstract and does not rest on existing facts or rights").
>
> The ICA has no jurisdiction to decide moot cases where its judgment "could not be carried into effect, or that relief was impossible to grant."  Lathrop v. Sakatani, 111 Hawai'i 307, 312, 141 P.3d 480, 485 (2006), quoting TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999) and Wong v. Bd. of Regents. Univ. of Hawai'i, 62 Haw. 391, 394-95, 616 P.2d 201, 204 (1980).  The mootness doctrine reflects that the conditions for justiciability—adverse interest and effective remedy—must remain alive throughout the litigation.  Wong, 62 Haw. at 394, 616 P.2d at 203-04.
>
> The "capable of repetition yet, evading review" exception to mootness doctrine cited by the Director does not appear to apply.  Hamilton Ex Rel Lethem v. Lethem, 119 Hawai'i 1, 5-10, 193 P.3d 839, 843-48 (2008).  The Director has not shown that review of adverse trial court decisions could not be obtained through other means, such as a petition for writ of mandamus or prohibition.

## C.   Application for Writ of Certiorari

The Director presents the following questions on certiorari:

1. Did the Intermediate Court of Appeals (ICA) gravely err when it dismissed the Director of Health's (Director) appeal for failure to address the adverse trial court decision "through other means, such as a petition for writ of mandamus or prohibition" prior to the Director's filing of an appeal?

2. Did the ICA gravely err when it failed to apply the "capable of repetition, yet evading review" exception to the mootness doctrine? Although this Defendant was transferred back to the custody of the Director of Public Safety (PSD), the custody status of a defendant awaiting a panel re-examination, is implicated in every regained fitness to proceed matter.

## III.  Standard of Review

Appellate courts review issues of mootness de novo. Kansas Judicial Review v. Stout, 519 F.3d 1107, 1114 (10th Cir. 2008); Wisconsin Right to Life, Inc. v. Schober, 366 F.3d 485, 489 (7th Cir. 2004); Ammex, Inc. v. Cox, 351 F.3d 697, 704 (6th Cr. 2003).

## IV. Discussion

**A.  There is no requirement that other means, such as a petition for writ of mandamus or prohibition, be pursued before an appellate court can consider whether the "capable of repetition, yet evading review" exception to the mootness doctrine applies.**

The ICA dismissed the appeal as moot, holding that it lacked appellate jurisdiction because custody of Tui had been already been transferred. In doing so, it stated that the "capable of repetition, yet evading review" exception to the mootness doctrine did not appear to apply because the Director had not shown that review could not have been obtained through "other means, such as a petition for writ of mandamus or

10

prohibition."  The ICA did not cite to any legal authority for the latter statement, and we could find none.

With respect to writs of mandamus or prohibition, this court has stated:

> A writ of mandamus and/or prohibition is an extraordinary remedy that will not issue unless the petitioner demonstrates a clear and indisputable right to the relief requested and a lack of other means to redress adequately the alleged wrong or to obtain the requested action.  Such writs are not meant to supersede the legal discretionary authority of the lower court, nor are they meant to serve as legal remedies in lieu of normal appellate procedures. Where a trial court has discretion to act, mandamus will not lie to interfere with or control the exercise of that discretion, even when the judge has acted erroneously, unless the judge has exceeded his or her jurisdiction, has committed a flagrant and manifest abuse of discretion, or has refused to act on a subject properly before the court under circumstances in which it has a legal duty to act.

Kema v. Gaddis, 91 Hawaiʻi 200, 204-05, 982 P.2d 334, 338-39 (1999) (internal citation omitted).  Thus, these extraordinary writs are not available if an issue can be adequately redressed through a typical appeal.

In comparison, there is no requirement that an appellant pursue relief through other means, such as through a petition for writ of mandamus or prohibition, in order to have an appellate court address whether the "capable of repetition yet evading review" exception to the mootness doctrine applies to an issue on appeal.  In other words, although an extraordinary writ cannot be obtained if adequate relief is available through an ordinary appeal, the converse does not hold true; an appellant is not required to show the unavailability of the extraordinary

11

writ process in order to obtain appellate relief.  Moreover, as also argued by the Director, extraordinary writs are only available where there is a "clear and indisputable" legal right to relief.  The circuit court ruled that she had no right to the relief she requested.  Therefore, under the circumstances of this case, she had no "clear and indisputable" legal right to relief.  Thus, the ICA should have addressed whether the "capable of repetition, yet evading review" exception to the mootness doctrine applies in this case.  We therefore address it now.

**B.   The "capable of repetition yet evading review" exception to the mootness doctrine applies.**

The Director raises various arguments for applicability of the "capable of repetition, yet evading review" exception to the mootness doctrine.  She asserts that it is the practice of the trial courts to order re-examinations to ascertain whether a defendant has regained fitness to proceed, but there is no explicit statute regarding the procedural process in determining regained fitness to proceed.  She states that she "will remain vigorous in requests to transfer defendants she believes are no longer in need of in-patient care and treatment back to the custody of the [DPS], while awaiting panel re-examinations" given her position that trial courts have discretion to order transfer of a defendant before a court confirms regained

fitness.  She further asserts that the issue of "the pre-trial custody of an alleged defendant affects the public interest, will arise in the future, and will almost always become moot before a needed authoritative determination by an appellate court can be made."  As to the last point, the Director also argues that "a real question of law remains unsettled" because "the interpretation and application of HRS chapter 704 affects the proceedings of all criminal cases (in which mental competency is at issue)[.]"  The Director therefore requests that the ICA's dismissal order be vacated and this case remanded to the ICA for consideration of the points of error raised.

"The mootness doctrine is said to encompass the circumstances that destroy the justiciability of a suit previously suitable for determination."  Wong, 62 Haw. at 394, 616 P.2d at 203.  Thus, "[a] case is moot if the reviewing court can no longer grant effective relief."  Kaho'ohanohano, 114 Hawai'i at 332, 162 P.3d at 726 (brackets in original) (citations omitted).  Nevertheless, this court has "repeatedly recognized an exception to the mootness doctrine in cases involving questions that affect the public interest and are 'capable of repetition yet evading review.'"  Okada Trucking Co., Ltd. v. Bd. of Water Supply, 99 Hawai'i 191, 196, 53 P.3d 799, 804 (2002) (citations omitted).  Although the Director asserts that "the pre-trial custody of an alleged defendant affects the public

interest," she does so in the context of arguing applicability of the "capable of repetition, yet evading review" exception. We note that the public interest exception and the "capable of repetition, yet evading review" exception are two separate and distinct exceptions.  See, e.g., Kahoʻohanohano, 114 Hawaiʻi at 333 n.23, 162 P.3d at 727 n.23; Lethem, 119 Hawaiʻi at 5, 193 P.3d at 843 ("[T]his court has explicitly recognized two exceptions to the mootness doctrine: (1) the 'capable of repetition, yet evading review' exception; and (2) the public interest exception." (bracketed text omitted)).  With regard to the exception for matters capable of repetition, yet evading review, this court has stated:

> The phrase, "capable of repetition, yet evading review," means that "a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit."

Id. (internal citation omitted).

The instant case falls within this exception to the mootness doctrine.  The issue of whether custody of a defendant previously found unfit can be transferred from the Director to the DPS is an issue likely to evade review.  The facts of this case amply demonstrate this point.  The issue is likely to arise again given the Director's assertion that she "will remain vigorous in requests to transfer defendants she believes are no

longer in need of in-patient care and treatment back to the custody of the [DPS], while awaiting panel re-examinations." The issue is especially likely to evade appellate review because if the Director is correct in her belief that a defendant has regained fitness, by the time an appellate court reviews the re-examination report, custody of the defendant will already have been transferred to the DPS, which is what happened in this case.

Therefore, the ICA erred in dismissing the Director's appeal based on the mootness doctrine.

### V. Conclusion

Accordingly, we vacate the ICA's Order Dismissing Appeal and remand this case to the ICA to address the remaining issues on appeal.

Debbie L. Tanakaya                    /s/ Mark E. Recktenwald
for petitioner
                                      /s/ Paula A. Nakayama
Nelson W.S. Goo
for respondent Tui, Jr.               /s/ Sabrina S. McKenna

Scott M. Spallina                     /s/ Richard W. Pollack
for respondent State
                                      /s/ Bert I. Ayabe