172 P.3d 1067

**John DOE and Jane Doe, Petitioner–
Appellants,**

**v.**

**John DOE and Jane Doe, Respondents–
Appellees.**

**No. 26471.**

Supreme Court of Hawai'i.

Dec. 13, 2007.

Elizabeth B. Croom, for petitioners-appellants.

Lois K. Perrin of the American Civil Liberties Union on Foundation and Earle A. Partington of The Law Office of Earle A. Partington, for respondents-appellees.

Rochelle Bobroff, for amicus curiae AARP Foundation Litigation.

Dorothy D. Sellers and Deirdre Marie–Iha, Deputy Attorneys General, for amicus curiae State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by NAKAYAMA, J.

Petitioners–Appellants, the grandparents ("Grandparents") of a minor child ("Child"), appeal from the third circuit family court's [1] February 27, 2004 order and February 27, 2004 judgment dismissing their petition for visitation rights filed pursuant to Hawai'i Revised Statutes ("HRS") § 571–46.3.[2] The solitary issue presented by Grandparents on appeal is whether the family court correctly concluded that HRS § 571–46.3, Hawaii's grandparent visitation statute, which allows the court to award reasonable visitation to a minor child's grandparent if it is "in the best interests of the child," is unconstitutional on its face in light of the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

For the following reasons, we hold (1) that HRS § 571–46.3 can be interpreted to comply with *Troxel*, but (2) that it implicates a fundamental right and is not narrowly tailored to further a compelling governmental interest. We therefore affirm the family

court's February 27, 2004 order and judgment.

## I. BACKGROUND

Grandparents filed a petition for visitation in the third circuit family court on September 16, 2003. According to Grandparents' petition, Mother and Father divorced in 2002. Child, six years' old at the time of the petition, resided with Mother, who was the sole custodial parent, in the County and State of Hawai'i. Father resided in California. Grandparents asserted that reasonable visitation was in Child's best interest.

Mother filed a motion to dismiss Grandparents' petition, asserting that Hawaii's grandparent visitation statute, which allows the court to award visitation to grandparents if it is in the best interests of the child(ren), is unconstitutional on its face, pursuant to *Troxel*.

On February 27, 2004, the family court filed an order dismissing Grandparents' visitation petition, ruling, in pertinent part, that "[HRS] § 571–46.3 ... is unconstitutional on its face in light of the United State's [sic] Supreme Court's decision in [*Troxel*]...." The family court also filed a judgment that same day.

On March 24, 2004, Grandparents filed a timely notice of appeal.[3]

On August 15, 2007, the State filed a "Notice As To Possible Mootness." The State informed this court that the present appeal may be moot inasmuch as sole legal custody of Child was transferred to Father in a related case (FC–S No. 04–0094K). As a result, this court filed an order to show cause as to

---

1. The Honorable William S. Chillingworth presided.

2. HRS § 571–46.3 (Supp.2003) provides:
 A grandparent or the grandparents of a minor child may file a petition with the court for an order of reasonable visitation rights. The court may award reasonable visitation rights provided that the following criteria are met:
 (1) This State is the home state of the child at the time of the commencement of the proceeding; and
 (2) Reasonable visitation rights are in the best interests of the child.
 No hearing for an order of reasonable visitation rights under this section shall be had

unless each of the living parents and the child's custodians shall have had due notice, actual or constructive, of the allegations of the petition and of the time and place of the hearing thereof.
 An order made pursuant to this section shall be enforceable by the court, and the court may issue other orders to carry out these enforcement powers if in the best interests of the child.

3. Non-parties State of Hawai'i ("State") and the American Association of Retired Persons were each granted leave of court to file amicus briefs.

why the present appeal should not be dismissed as moot. Grandparents filed a response on September 7, 2007, stating that they did not oppose dismissal of the case on mootness grounds. Mother, however, filed a response asserting that (1) the case is not moot, and (2) even if moot, the present matter falls within one of the well-recognized exceptions to the mootness doctrine.

## II. STANDARDS OF REVIEW

### A. Mootness

■ Generally, this court will not entertain "moot questions or abstract principles of law." *Diamond v. State, Bd. of Land & Natural Res.*, 112 Hawai'i 161, 169, 145 P.3d 704, 712 (2006) (citations omitted).

### B. Constitutional Questions

■ It is well settled that constitutional questions of law are reviewed *de novo* under the right/wrong standard. *See In re Guardianship of Carlsmith*, 113 Hawai'i 236, 239, 151 P.3d 717, 720 (2007).

## III. DISCUSSION

### A. Grandparents' Appeal Falls Within the Public Interest Exception to the Mootness Doctrine.

■ Mootness is one aspect of this court's prudential rules of justiciability concerned with ensuring the adjudication of live controversies. *See Wong v. Bd. of Regents, Univ. of Hawai'i*, 62 Haw. 391, 394, 616 P.2d 201, 204 (1980) ("Judicial tribunals sit only for the determination of real controversies between parties who have a legal interest of at least technical sufficiency in the subject-matters embraced in the records of causes pending in courts.") (Quoting *Castle v. Irwin*, 25 Haw. 786, 792 (1921).). It is well-established in Hawai'i that

[a] case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where "events" ... have so affected the relations between the parties that the two conditions for justiciability relevant on ap-

peal—adverse interest and effective remedy—have been compromised.

*Okada Trucking Co., Ltd. v. Bd. of Water Supply*, 99 Hawai'i 191, 195–96, 53 P.3d 799, 803–04 (2002) (citations omitted) (brackets in original) (ellipses in original). Synonymously,

[a] case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law. The rule is one of the prudential rules of judicial self-governance founded in concern about the proper—and properly limited—role of the courts in a democratic society. We have said the suit must remain alive throughout the course of litigation to the moment of final appellate disposition to escape the mootness bar.

*Kaho'Ohanohano v. State*, 114 Hawai'i 302, 332, 162 P.3d 696, 726 (2007) (emphasis removed) (citations omitted). In sum, "[a] case is moot if the reviewing court can no longer grant effective relief." *Id.* (brackets in original) (emphasis removed) (citations omitted).

Here, Mother asserts that the appeal is not moot for the following reasons:

Whether the statute is constitutional remains a live question because the grandparents' right to visitation were never adjudicated in the related Family Court case. Furthermore, because the Family Court for the Third Circuit retains jurisdiction of the related Family Court case until the child reaches the age of eighteen, mother retains the right to seek a modification of the court order and an award of custody until that time. H.R.S. § 571–46. As such, both mother and the grandparents have a vested interest in a final determination of their rights in this matter.

We disagree. Under the general rule stated, the transfer of custody of Child to Father destroyed the controversy created by the filing of the petition for visitation. Indeed, this court cannot grant Grandparents the remedy they seek on appeal—enforcement of the petition for visitation—inasmuch as the petition expressly requested court-ordered visitation from Mother and Mother no longer has legal custody of Child. *See, e.g., Wong*, 62 Haw. at 396, 616 P.2d at 205 (holding that

the appeal was moot because "there [was] nothing left to grant [the] appellant"); *Okada Trucking*, 99 Hawai'i at 196, 53 P.3d at 804 (holding that the appeal was moot "because the contract has already been completed" and that the remedy was "no longer available"). Grandparents appear to accept this outcome inasmuch as they expressly state that they do not object to the dismissal of their appeal on mootness grounds. Hence, given the apparent lack of an adverse interest and an effective remedy, the continued vitality of the present appeal has been compromised.

 Nevertheless, this court has recognized several exceptions to the mootness doctrine. Of particular relevance here is the public interest exception clarified in *Slupecki v. Admin. Dir. Of the Courts*, 110 Hawai'i 407, 133 P.3d 1199 (2006). Therein, we stated that "when the question involved affects the public interest and an authoritative determination is desirable for the guidance of public officials, a case will not be considered moot." *Id.* at 409 n. 4, 133 P.3d at 1201 n. 4.[4] *See infra* at 7. When analyzing the public interest exception, we look to "(1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for future guidance of public officers, and (3) the likelihood of future recurrence of the question." *Kaho'ohanohano*, 114 Hawai'i at 333, 162 P.3d at 727 (citing *United Pub. Workers, AFSCME, Local 646, AFL–CIO v. Yogi*, 101 Hawai'i 46, 58, 62 P.3d 189, 201 (2002) (Acoba, J., concurring)) (brackets omitted).

Here, there can be no question that it is in the public's interest for this court to review the family court's ruling that Hawaii's grandparent visitation statute is unconstitutional on its face. As to the first factor for consideration, the underlying proceedings are, at bottom, a private battle between Mother and Grandparents over whether Grandparents' access to Child is in Child's best interest. Nevertheless, the family court's wholesale invalidation of HRS § 571–46.3 injects the

requisite degree of public concern. As Mother asserts, the family court's ruling stands to affect the fundamental rights of many Hawai'i families. With respect to the second factor, the present matter begs for an authoritative determination inasmuch as the shadow cast over this jurisdiction's grandparent visitation statute creates a significant degree of uncertainty for any public officer involved in the child custody and visitation processes. As to the third factor, there is a strong likelihood that the issue presented will recur. To wit, the family court found the statute unconstitutional *on its face*. Thus, the issue may arise where any custodial parent is confronted with a petition for visitation under HRS § 571–46.3.

For these reasons, we hold that, notwithstanding the transfer of custody of Child to Father, the present appeal is not rendered moot in light of the public interest exception to the mootness doctrine. *See supra* at 6.

**B. We May Reasonably Conclude That HRS § 571–46.3 Is Not Facially Unconstitutional In Light of *Troxel***

 Turning to the merits of the appeal, the sole issue presented by Grandparents is whether HRS § 571–46.3, which allows the court to award the grandparent of a minor child reasonable visitation if it is "in the best interests of the child," is facially unconstitutional in light of the United States Supreme Court's decision in *Troxel*.

*1. Troxel v. Granville*

In *Troxel*, Tommie Granville ("Granville") conceived two daughters over the course of her relationship with Brad Troxel ("Troxel"). 530 U.S. at 60, 120 S.Ct. 2054. Granville and Troxel eventually separated and, for a period of time, Troxel regularly brought the children to his parents' ("Grandparents'") home for weekend visitation. *Id.* Tragically, Troxel then committed suicide. *Id.* Following Troxel's death, the children continued regu-

---

4. We distinguished the public interest exception from the exception designed to preserve issues that are "capable of repetition, yet evading review." *Slupecki*, 110 Hawai'i at 409 n. 4, 133 P.3d at 1201 n. 4. We have recently pointed out that although these two exceptions have been merged at times, they are, in fact, "separate and distinct." *Kaho'ohanohano*, 114 Hawai'i at 333 n. 23, 162 P.3d at 727 n. 23.

lar visits with Grandparents until Granville decided to limit visitation to "one short visit per month." *Id.* at 60–61, 120 S.Ct. 2054.

Grandparents responded by filing a petition for visitation under Wash. Rev.Code § 26.10.160(3) (1994).[5] *Id.* at 61, 120 S.Ct. 2054. Wash. Rev.Code. § 26.10.160(3) provides as follows: "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." 530 U.S. at 61, 120 S.Ct. 2054 (citing Wash. Rev.Code § 26.10.160(3)).

Following trial, the Washington Superior Court for Skagit County ordered "visitation one weekend per month, one week during the summer, and four hours on both of the petitioning grandparents' birthdays." *Id.* The Washington Court of Appeals reversed the trial court's visitation order on the grounds that Grandparents lacked standing to seek visitation under Wash. Rev.Code § 26.10.160(3) unless a custody action was pending. *Id.* at 62, 120 S.Ct. 2054.

On appeal, the Washington Supreme Court concluded that the plain language of Wash. Rev.Code § 26.10.160(3) imparted standing on Grandparents. *Id.* at 62, 120 S.Ct. 2054. However, it affirmed the court of appeals' ultimate decision that the Troxels could not obtain visitation on the grounds that the statute "unconstitutionally infringes on the fundamental right of parents to rear their children," without requiring a show of harm to the children. *Id.* at 63, 120 S.Ct. 2054. Moreover, the Washington Supreme Court declared that the visitation statute too broadly allows the state to intrude on the affairs of the family inasmuch as " 'any person' may petition for forced visitation of a child at 'any time' with the only requirement being that the visitation serve the best interest of the child." *Id.* (quoting *In re Custody of Smith,* 137 Wash.2d 1, 969 P.2d 21, 30 (1998)). It held that "[i]t is not within the province of the state to make significant decisions con-

cerning the custody of children merely because it could make a 'better' decision," and emphasized the need for parents to "be the ones to choose whether to expose their children to certain people or ideas." *Id.* (Quoting *Smith,* 137 Wash.2d at 20–21, 969 P.2d at 31.).

On appeal, a fractured United States Supreme Court affirmed the Washington Supreme Court's judgment, but for a variety of reasons.

### a. Plurality opinion

Justice O'Connor announced the judgment of the Court, and her plurality opinion was joined by Chief Justice Rehnquist, Justice Ginsburg, and Justice Breyer. *Id.* at 60, 120 S.Ct. 2054. The plurality held that Wash. Rev.Code § 26.10.160(3), as applied, violated Granville's fundamental right to make decisions concerning the care, custody, and control of her children. *Id.* at 67, 120 S.Ct. 2054.

The plurality first noted that Washington's visitation statute was "breathtakingly broad." *Id.* In the plurality's view, the Washington statute permitted "any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review," and allowed the trial judge to determine what visitation is the best interest of the child(ren). *Id.* Hence, the "practical effect" of Washington's visitation statute was to allow a court to "disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." *Id.* (emphasis in original).

Turning to the facts of the case, the plurality pointed out that "[Grandparents] did not allege, and no court has found, that [Granville] was an unfit parent." *Id.* at 68, 120 S.Ct. 2054. The plurality thereafter emphasized the importance of the established presumption "that fit parents act in the best interest of their children." *Id.* at 68, 120

**5.** Grandparents also invoked Wash. Rev.Code § 26.09.240 (1994), but that statute was not at

issue on appeal. 530 U.S. at 61, 120 S.Ct. 2054.

S.Ct. 2054. The plurality reasoned that the trial court's visitation order contravened the foregoing presumption inasmuch as it (1) accorded no "special weight" to Granville's determination of her children's best interests, and (2) appeared to place the burden on Granville to disprove that visitation would be in her children's best interests. *Id.* at 69, 120 S.Ct. 2054. The plurality summarized its rationale as follows:

> In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. *And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.*

*Id.* at 70, 120 S.Ct. 2054 (emphasis added).

The plurality also considered that Granville did not seek to terminate visitation with Grandparents. *Id.* at 71, 120 S.Ct. 2054. Rather, Granville requested that the trial court order one day of visitation per month and participation in Grandparents' family holiday celebrations. *Id.* The trial court appeared to give no weight to Granville's suggested visitation plan and "settled on a middle ground, ordering one weekend of visitation per month, one week in the summer, and time on both of the petitioning grandparents' birthdays." *Id.* The plurality noted that other state statutes preclude judicial involvement unless the parent has unreasonably denied visitation to the third party. *Id.* at 71–72, 120 S.Ct. 2054.

The plurality further observed that the trial court's findings demonstrated "nothing more than a simple disagreement between [the trial court] and [Granville] concerning her children's best interests." *Id.* at 72, 120 S.Ct. 2054. For example, the trial court found that (1) Grandparents "are part of a large, central, loving family, all located in this area, and [Grandparents] can provide opportunities for the children in the areas of cousins and music," *id.* at 72, 120 S.Ct. 2054, and

(2) "[t]he children would be benefitted from spending quality time with [Grandparents], provided that that time is balanced with time with the childrens' [*sic*] nuclear family." *Id.* (some alterations in original and some added). The trial judge also reflected on his own personal experiences with his grandparents in making his decision: "I look back on some personal experiences.... We always spen[t] as kids a week with one set of grandparents and another set of grandparents, [and] it happened to work out in our family that [it] turned out to be an enjoyable experience. Maybe that can, in this family, if that is how it works out." *Id.* (brackets in original).

In light of the foregoing, the plurality held that Wash. Rev.Code § 26.10.160(3) was unconstitutional as applied to the facts of the case, concluding as follows:

> As we have explained, the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made. Neither the Washington nonparental visitation statute generally—which places no limits on either the persons who may petition for visitation or the circumstances in which such a petition may be granted—nor the [trial court] in this specific case required anything more.

*Id.* at 72–73, 120 S.Ct. 2054.

### b. Justice Souter's concurring opinion

Justice Souter filed an opinion concurring in the judgment. *Id.* at 75, 120 S.Ct. 2054 (Souter, J., concurring). Justice Souter stated that the dispositive analysis required no more than a recognition that the Washington Supreme Court's "facial invalidation of its own state statute" was consistent with the precedent established by the United States Supreme Court. *Id.* To wit, he perceived

> no error in the second reason [iterated by the Washington Supreme Court], that because the state statute authorizes any person at any time to request (and a judge to award) visitation rights, subject only to the State's particular best-interests standard,

the state statute sweeps too broadly and is unconstitutional on its face. *Id.* at 76, 120 S.Ct. 2054. Hence, Justice Souter stated that he would affirm the Washington Supreme Court's judgment because he did "not question the power of a State's highest court to construe its domestic statute and to apply a demanding standard when ruling on its facial constitutionality...." *Id.* at 79, 120 S.Ct. 2054 (footnote omitted).

### c. Justice Thomas' concurring opinion

Justice Thomas wrote separately to iterate his view that the matter was more properly disposed of via a strict scrutiny analysis:

> [P]arents have a fundamental constitutional right to rear their children, including the right to determine who shall educate and socialize them. .... I would apply strict scrutiny to infringements of fundamental rights. Here, the State of Washington lacks even a legitimate governmental interest—to say nothing of a compelling one—in second-guessing a fit parent's decision regarding visitation with third parties.

*Id.* at 80, 120 S.Ct. 2054 (Thomas, J., concurring).

### d. Justice Stevens' dissenting opinion

Justice Stevens dissented. He opined, *inter alia*, that the Washington Supreme Court's opinion was flawed, inasmuch as it held that Wash. Rev.Code § 26.10.160(3) was unconstitutional on its face. *Id.* at 85–91, 120 S.Ct. 2054 (Stevens, J., dissenting). Justice Stevens explained that, "[a]s the statute plainly sweeps in a great deal of the permissible, the State Supreme Court majority incorrectly concluded that a statute authorizing 'any person' to file a petition seeking visitation privileges would invariably run afoul of the Fourteenth Amendment." *Id.* at 85, 120 S.Ct. 2054. He iterated that under the Washington statute, "a once-custodial caregiver, an intimate relation, or even a genetic parent" may seek visitation, which, depending on the facts of the case, may be constitutional. *Id.*

Justice Stevens also observed that Washington Supreme Court's holding that the Constitution requires a threshold showing of actual or potential harm to the child before a court may order visitation over a parent's objection was not supported by United States Supreme Court's case law and that "even a fit parent is capable of treating a child like a mere possession." *Id.* at 86, 120 S.Ct. 2054. Justice Stevens concluded that

> the Washington law merely gives an individual—with whom a child may have an established relationship—the procedural right to ask the State to act as arbiter, through the entirely well-known best-interests standard, between the parent's protected interests and the child's.... [T]he Due Process Clause of the Fourteenth Amendment leaves room for States to consider the impact on a child of possibly arbitrary parental decisions that neither serve nor are motivated by the best interests of the child.

*Id.* at 91, 120 S.Ct. 2054.

### e. Justice Scalia's dissenting opinion

Justice Scalia took a different tack. He first acknowledged that, in his view, parental rights to direct the upbringing of their children are "unalienable" under the Declaration of Independence and the ninth amendment to the United States Constitution. *Id.* (Scalia, J., dissenting). However, he questioned whether he, or any other judge, had constitutional authority to enforce his, or their, list of unalienable rights "against laws duly enacted by the people." *Id.* at 92, 120 S.Ct. 2054.

Justice Scalia subsequently pointed out that only a handful of the Court's holdings relied on a "substantive constitutional right of parents to direct the upbringing of their children," but he would not "extend the theory upon which they rested to this new context." *Id.*

Finally, Justice Scalia cautioned that if the Court desired to further develop constitutional jurisprudence with respect to parental rights, such jurisprudence required "not only a judicially crafted definition of parents, but also ... judicially approved assessments of 'harm to the child' and judicially defined gradations of other persons ... who may have some claim against the wishes of the parents." *Id.* at 92–93, 120 S.Ct. 2054. But, to do so would be tantamount to creating

"judicially prescribed, and federally prescribed, family law." *Id.* at 93, 120 S.Ct. 2054. Justice Scalia stated that such issues are best left to the discretion of state legislatures: "I have no reason to believe that federal judges will be better at this than state legislatures; and state legislatures have the great advantages of doing harm in a more circumscribed area, of being able to correct their mistakes in a flash, and of being removable by the people." *Id.* (footnote omitted).

### f. Justice Kennedy's dissenting opinion

According to Justice Kennedy, the Washington Supreme Court's ruling was flawed because it essentially announced "a categorical rule that third parties who seek visitation must always prove the denial of visitation would harm the child." *Id.* at 96, 120 S.Ct. 2054 (Kennedy, J., dissenting). In Justice Kennedy's view, the use of a categorical harm to the child standard is overly broad inasmuch as it may operate to sacrifice substantial relationships between children and third parties in order to protect the arbitrary exercise of a parental right. *Id.* at 98–99, 120 S.Ct. 2054. He cautioned that "a fit parent's right vis-a-vis a complete stranger is one thing; her right vis-a-vis another parent or a *de facto* parent may be another." *Id.* at 100–01, 120 S.Ct. 2054.

Given his disagreement with the proposition that the best interest of the child standard is insufficient in all cases, Justice Kennedy would have remanded the matter for further proceedings to determine whether the best interest of the child standard is insufficient under the facts of the case presented (*i.e.,* whether Wash. Rev.Code § 26.10.160(3) was unconstitutional as applied):

> I would remand the case to the state court for further proceedings. If it then found the statute has been applied in an unconstitutional manner because the best interests of the child standard gives insufficient protection to a parent under the circumstances of this case, or if it again declared the statute a nullity because the statute seems to allow any person at all to seek visitation at any time, the decision would present other issues which may or may not warrant further review in this Court. .... The judgment now under review should be vacated and remanded on the sole ground that the harm ruling that was so central to the Supreme Court of Washington's decision was error, given its broad formulation.

*Id.* at 94–95, 120 S.Ct. 2054.

### 2. *Troxel does not require the conclusion that HRS § 571–46.3 is facially unconstitutional.*

■ It is appropriate to commence the present analysis by reiterating the axiom that "every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt." *State v. Crouser,* 81 Hawai'i 5, 14, 911 P.2d 725, 734 (1996) (citing *State v. Gaylord,* 78 Hawai'i 127, 137–38, 890 P.2d 1167, 1177–78 (1995)). Moreover, this court has said that it will interpret a statute so as to preserve its constitutionality whenever feasible. *See State v. Raitz,* 63 Haw. 64, 73, 621 P.2d 352, 359 (1980) ("[I]f feasible within bounds set by their words and purpose, statutes should be construed to preserve their constitutionality.") (Citing *Altman v. Hofferber,* 28 Cal.3d 161, 175, 616 P.2d 836, 846, 167 Cal.Rptr. 854, 864 (1980).).

As Mother contends, HRS § 571–46.3 does not expressly direct the family court to give "special weight" to a fit parent's decision regarding grandparent visitation. *See supra* note 2. Mother argues that we may not simply create new statutory requirements under the guise of interpretation inasmuch as such an approach would be tantamount to judicial legislation. Mother further avers that such an interpretation would be contrary to legislative history which "makes clear that the purpose of the statute was to afford the courts with discretion to override parents' decisions about his or her child's best interests."

Inasmuch as the issue presented is one of statutory interpretation, our analysis must rest upon the plain language of the statute and any legitimate construction thereof. *See*

*Honda v. Bd. of Trs. of the Employees' Ret. Sys. of the State*, 108 Hawai'i 212, 233, 118 P.3d 1155, 1176 (2005) ("[O]ur foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.") (Citations omitted.). As always, the focal point of the analysis must be the intent of the legislature, *id.*, keeping in mind that the legislature is presumed not to intend to enact laws that are unconstitutional. *See Application of Ferguson*, 74 Haw. 394, 400 846 P.2d 894, 898 (1993) ("[T]he legislature is presumed to have enacted valid statutes in harmony with all constitutional provisions.").

Here, the legislature has enacted the "best interests of the child" standard as a precondition to court-ordered visitation under HRS § 571–46.3. Legislative history indicates that the "best interests of the child" standard was intended to act as a safeguard protecting the rights of the parents:

> Your Committee believes that the Judiciary's second concern, regarding this bill's possible interference with the rights of the parents, is addressed by your Committee's inclusion in the criteria that such visitation be in the best interests of the child. The award of the grandparent's visitation is not meant to be at the expense

of the parents' relationship with the child and the best interests of the child. Your Committee believes that usually, absent special circumstances, it. is in the best interests of the child to have reasonable visitation with the parents. If the visitation of the grandparents would adversely affect the reasonable visitation of the parents, it would probably not be in the best interests of the child to permit the grandparents' visitation.

Hse. Stand. Comm. Rep. No. 514, 1993 House Journal at 1181 (emphasis added).[6] Having provided no further guidance as to how the "best interests of the child" standard is to operate, the legislature has left it open for interpretation.

Other jurisdictions with similar opportunities have interpreted their nonparent visitation statutes in various ways so as to conform with the *Troxel* plurality's minimum requirements. *See Koshko v. Haining*, 398 Md. 404, 921 A.2d 171, 185 (2007); *Soohoo v. Johnson*, 731 N.W.2d 815, 824 (Minn.2007); *E.S. v. P.D.*, 8 N.Y.3d 150, 159, 863 N.E.2d 100, 106, 831 N.Y.S.2d 96, 102 (N.Y.2007); *J.W.J., Jr. v. P.K.R.*, 2007 WL 1874294, *4 (Ala.Civ.App. June 29, 2007); *Barry v. McDaniel*, 934 So.2d 69, 76–77 (La.Ct.App.2006); *Deem v. Lobato*, 136 N.M. 266, 96 P.3d 1186, 1191–92 (Ct.App.2004); *Glidden v. Conley*, 175 Vt. 111, 820 A.2d 197, 204–05 (2003); *McGovern v. McGovern*, 201 Ariz. 172, 33 P.3d 506, 511–

---

**6.** Mother argues that several legislative committee reports indicate that the legislature intended to "allow a court to order grandparent visitation whenever the court determined such visitation to be in the best interests of the child even over the objection of a parent." We do not necessarily disagree with that assertion. Indeed, there can be no doubt that the legislature intended that visitation, if found by a court to be in the best interests of the child, may be ordered over a parent's objection. *See* Sen. Stand. Comm. Rep. No. 1053, in 1993 Senate Journal, at 1154 ("Your Committee finds that grandparents play a significant role in the lives of minor children and should be allowed reasonable visitation rights so long as it is in the best interests of the child."); Hse. Stand. Comm. Rep. No. 611–98, in 1998 House Journal, at 1276 ("In today's society grandparents play an integral part in the lives of children. In the United States, millions of grandparents care for their grandchildren when parents are away. Your Committee believes that there are times when visitation by grandparents

is in the best interest of the child and thus should be encouraged."). However, such an approach is not inconsistent with *Troxel*. To wit, the *Troxel* plurality stated that "[t]he problem ... [was] not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [Mother's] determination her daughter's best interests." 530 U.S. at 70, 120 S.Ct. 2054. In other words, "if a fit parent's decision ... becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Id.* Hence, it is irrelevant under *Troxel* that HRS § 571–46.3 authorizes a court to order grandparent visitation over a fit parent's objection. Rather, what matters is that the family court gives "at least some special weight" to the parent's opinion. The legislative history cited by Mother certainly conveys an intent to authorize a court to order visitation notwithstanding a parent's objections, but it does not contain any indication either for or against applying a rebuttable presumption in favor of the parent's objections.

12 (Ct.App.2001); *Rideout v. Riendeau*, 761 A.2d 291, 298–99 (Me.2000).

Given our obligation to adopt constitutionally sound interpretations where "feasible," we may reasonably conclude that the "best interests of the child" standard in HRS § 571–46.3(2) requires the family court to give "special weight" to (*i.e.*, uphold a rebuttable presumption in favor of) the visitation decisions of a custodial parent whose fitness has not been challenged. Such a conclusion comports with the limited requirements expressed in *Troxel* and does not do violence to either the words or the purposes of the statute. Hence, the family court erred to the extent that it relied on *Troxel* to invalidate HRS § 571–46.3.

## C. HRS § 571–46.3 Implicates a Fundamental Right and Is Not Narrowly Tailored to Further a Compelling Governmental Interest.

 Nevertheless, we agree with Mother's alternative argument challenging the constitutional validity of this jurisdiction's grandparent visitation statute on the grounds that the "best interests of the child" standard is insufficient in nonparent visitation proceedings. Specifically, Mother contends that the infringement of her fundamental right to direct the upbringing of Child triggers a strict scrutiny analysis, requiring that the statute be narrowly tailored to further a compelling governmental interest.[7] According to Mother, only a showing of "harm" will satisfy the compelling governmental interest inquiry.[8]

The *Troxel* plurality did not address the question whether a finding of harm is constitutionally required. Rather, the plurality stated:

Because we rest our decision on the sweeping breadth of § 26.10.160(3) and the application of that broad, unlimited power in this case, *we do not consider the primary constitutional question passed on by* the Washington Supreme Court—whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context. In this respect we agree with Justice Kennedy that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best "elaborated with care." . . . . Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter.

*Troxel*, 530 U.S. at 73, 120 S.Ct. 2054 (emphasis added). Here, however, that issue is squarely presented, and we address it.

The applicable substantive due process analysis has been stated thus:

To state a claim under the fourteenth amendment, a litigant must assert that some state action has deprive the litigant of a constitutionally protected "liberty" or "property" interest. *See, e.g., State v. Guidry*, 105 Hawai'i 222, 227, 96 P.3d 242, 247 (2004); *State v. Bowe*, 77 Hawai'i 51, 59, 881 P.2d 538, 546 (1994). "In determining whether a statute conflicts with the Due Process Clause, we have applied two tests. If a fundamental right is implicated, the statute is subject to strict scrutiny. If, however, a fundamental right is not implicated, the statute is subject to the rational basis test." *State v. Mallan*, 86 Hawai'i 440, 451, 950 P.2d 178, 189 (1998).

*Child Support Enforcement Agency v. Doe*, 109 Hawai'i 240, 247, 125 P.3d 461, 468 (2005). A majority of the *Troxel* Court recognized that a parent's fundamental right to

---

7. We note that this is the approach advocated by Justice Thomas in his concurring opinion. *See Troxel*, 530 U.S. at 80, 120 S.Ct. 2054 (Thomas, J., concurring).

8. Justice Kennedy's dissenting opinion strongly opposes the position advocated by Mother-that the "best interests of the child" standard is always insufficient in visitation cases and that the party seeking visitation must demonstrate that withholding visitation would harm the child. *See Troxel*, 530 U.S. at 96, 120 S.Ct. 2054 (Kennedy, J., dissenting).

direct the upbringing of his or her child is implicated where a nonparent third party petitions for visitation. *Troxel,* 530 U.S. at 67–68, 120 S.Ct. 2054 (O'Conner, J., Rehnquist, J., Ginsburg, J., Breyer, J.), 77–79, 120 S.Ct. 2054 (Souter, J. concurring), 80, 120 S.Ct. 2054 (Thomas, J. concurring). The *Troxel* plurality discussed the history of its court's recognition that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children:

> More than [seventy-five] years ago, in *Meyer v. Nebraska,* 262 U.S. 390, 399, 401[, 43 S.Ct. 625, 67 L.Ed. 1042] (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters,* 268 U.S. 510[, 45 S.Ct. 571, 69 L.Ed. 1070] (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." We explained in *Pierce* that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.,* at 535[, 45 S.Ct. 571]. We returned to the subject in *Prince v. Massachusetts,* 321 U.S. 158[, 64 S.Ct. 438, 88 L.Ed. 645] (1944), and again confirmed there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care, and nurture of the child resides first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.,* at 166[, 64 S.Ct. 438].

*Troxel,* 530 U.S. at 65–66, 120 S.Ct. 2054. In *Prince,* the United States Supreme Court expressed its concern for the constitutional protection of parental rights inasmuch as it noted that the state cannot interfere with "the private realm of family life." *Prince,* 321 U.S. at 166, 64 S.Ct. 438. *See Hawk v. Hawk,* 855 S.W.2d 573, 578 (Tenn.1993) ("The [United States Supreme] Court's *pro-tection of parental rights* thus evidences a deeper concern for the *privacy rights* inherent in the federal constitution." (Emphases added.)).

Hawaii's appellate courts have also recognized that parents have a fundamental liberty interest in raising their children. *See In re Doe,* 77 Hawai'i 109, 114–15, 883 P.2d 30, 35–36 (1994) (ruling that " 'fundamental liberty interests' in the custody and care of [Mother's] child compel appellate review even though the degree of finality normally required for an appeal has not been met"); *In re D.W.,* 113 Haw. 499, 502, 155 P.3d 682, 685 (App.2007) (recognizing that "decisions have by now made plain ... that a parent's desire for and right to "the companionship, care, custody and management of his or her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection," but holding that "the Constitution [does not] require[ ] the appointment of counsel in every parental termination proceeding") (citation omitted). Parents' right to raise their children is protected under article I, section 6 of the Hawai'i Constitution, which requires the showing of a compelling state interest prior to infringing on privacy rights. Under the constitutional right to privacy, "among the decisions that an individual may make without unjustified government interference are personal decisions 'relating to marriage ..., procreation ..., contraception ..., family relationships ..., and *child rearing* and education.' " *State v. Mallan,* 86 Hawai'i 440, 495, 950 P.2d 178, 233 (1998) (quoting *Carey v. Population Servs. Intern.,* 431 U.S. 678, 684–85, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977)) (emphasis added). *See also In re Doe,* 108 Hawai'i 144, 157, 118 P.3d 54, 67 (2005) (holding that *"parents have a substantive liberty interest in the care, custody, and control of their children* protected by the due process clause of article I, section 5 of the Hawai'i Constitution" (quoting *In re Doe Children,* 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002) (internal quotation marks omitted) (emphasis added)); *In re Doe Children,* 99 Hawai'i at 534, 57 P.3d at 459 (stating that " 'parents have a fundamental liberty interest in the care, custody and management of their chil-

dren and the state may not deprive a person of his or her liberty interest without providing a fair procedure for the deprivation" (quoting *Hollingsworth v. Hill,* 110 F.3d 733, 738–39 (10th Cir.1997) (citations and internal quotation marks omitted)). Thus, inasmuch as this jurisdiction's grandparent visitation statute implicates parents' right to raise their children as protected under the right to privacy, it must be strictly scrutinized.

 In order to survive strict scrutiny, "the statute must be justified by a compelling state interest, and drawn sufficiently narrowly that it is the least restrictive means for accomplishing that end." *Conaway v. Deane,* 401 Md. 219, 932 A.2d 571, 603 (2007); *see also St. John's United Catholic Church of Christ v. City of Chicago,* 502 F.3d 616, 634 (7th Cir.2007); *Washington v. Klem,* 497 F.3d 272, 285 (3d Cir.2007).

Other jurisdictions have held that the strict scrutiny inquiry is satisfied only where denial of visitation to the nonparent third party would result in significant harm to the child. *See In re Marriage of Ciesluk,* 113 P.3d 135, 145 (Colo.2005) ("[I]n the absence of demonstrated harm to the child, the best interests of the child standard is insufficient to serve as a compelling state interest overruling the parents' fundamental rights."); *Moriarty v. Bradt,* 177 N.J. 84, 827 A.2d 203, 222 (2003) ("Because the Grandparent Visitation Statute is an incursion on a fundamental right (the right to parental autonomy), ... it is subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest. Our prior jurisprudence establishes clearly that the only state interest warranting the invocation of the State's *parens patriae* jurisdiction to overcome the presumption in favor of a parent's decision and to force grandparent visitation over the wishes of a fit parent is the avoidance of harm to the child."); *Roth v. Weston,* 259 Conn. 202, 789 A.2d 431, 445 (2002) ("Without having established substantial, emotional ties to the child, a petitioning party could never prove that serious harm would result to the child should visitation be denied. This is as opposed to the situation in which visitation with a third party would be in the best interests of the child or would be very benefi-

cial. The level of harm that would result from denial of visitation in such a situation is not of the magnitude that constitutionally could justify overruling a fit parent's visitation decision."); *Williams v. Williams,* 256 Va. 19, 501 S.E.2d 417, 418 (1998) (agreeing with the intermediate appellate court's conclusion that "[f]or the constitutional requirement to be satisfied, before visitation can be ordered over the objection of the child's parents, a court must find actual harm to the child's health or welfare without such visitation"); *In re Parentage of C.A.M.A.,* 154 Wash.2d 52, 109 P.3d 405, 413 (2005) (concluding that "RCW 26.09.240's presumption in favor of grandparent visitation is unconstitutional under *Troxel* and the application of the 'best interests of the child' standard rather than a 'harm to the child' standard is unconstitutional under [*Smith,* 969 P.2d 21, *aff'd sub nom., Troxel,* 530 U.S. 57, 120 S.Ct. 2054]"); *In re Herbst,* 971 P.2d 395, 399 (Okla.1998) ("[A] vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see the child."); *Beagle v. Beagle,* 678 So.2d 1271, 1276 (Fla.1996) (concluding under the privacy clause of the Florida Constitution, that the state has a compelling interest in ordering grandparent visitation over the wishes of a fit parent only "when it acts to prevent demonstrable harm to the child"); *Brooks v. Parkerson,* 265 Ga. 189, 454 S.E.2d 769, 773 (1995) ("[W]e find that implicit in Georgia cases, statutory and constitutional law is that state interference with parental rights to custody and control of children is permissible only where the health or welfare of a child is threatened."); *Hawk,* 855 S.W.2d at 582 ("We hold that Article I, Section 8 of the Tennessee Constitution protects the privacy interest of these parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right."). We agree with these jurisdictions that proper recognition of parental autonomy in child-rearing decisions

requires that the party petitioning for visitation demonstrate that the child will suffer significant harm in the absence of visitation before the family court may consider what degree of visitation is in the child's best interests.

As previously noted, HRS § 571–46.3 may be interpreted to afford "special weight" to a fit parent's visitation decision, thus preserving its validity under *Troxel*. However, there is no basis for reading in a "harm to the child" standard when the statute's plain language expressly refers to the "best interests of the child." Although we will interpret a statute in a manner that will preserve its constitutionality, reading in a "harm to the child" standard goes beyond interpretation and essentially constitutes judicial legislation. *See Honbo v. Hawaiian Ins. & Guar. Co., Ltd.*, 86 Hawai'i 373, 376, 949 P.2d 213, 216 (App.1997) ("If there is any inequality or any situation that was overlooked in the law, it is up to the legislature to make the correction. For this court to do so under the guise of statutory construction is to indulge in judicial legislation which we are prohibited from doing under the doctrine of separation of powers.").

In sum, because we believe that a "harm to the child" standard is constitutionally required and cannot be read into HRS § 571–46.3 without making a substantive amendment to the statute, we agree with Mother and the family court that HRS § 571–46.3, as written, is unconstitutional.

## IV. CONCLUSION

Based upon the foregoing analysis, we affirm the family court's February 27, 2004 order and February 27, 2004 judgment dismissing Grandparents' petition for visitation rights.