**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000618
14-APR-2022
07:48 AM
Dkt. 63 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---

SC, Petitioner, v.
JC, Respondent-Appellant
and
TG and AG, Intervenors-Appellees

NO. CAAP-20-0000618

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(UCCJEA NO. 20-1-6004)

APRIL 14, 2022

GINOZA, C.J., AND WADSWORTH AND McCULLEN, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

Self-represented Respondent-Appellant JC (**Father**) appeals from the "Order Re: [Father's] Motion & Declaration for Post-Decree Relief Filed 2/25/20" (**Order Denying Relief**), entered on September 18, 2020, in the Family Court of the First Circuit (**Family Court**).[1/] Father's February 25, 2020 Motion and Declaration for Post-Decree Relief (**Post-Decree Motion**) sought modification of a Colorado court's order granting self-represented Intervenors-Appellees TG and AG's (**Maternal Grandparents**) motion for visitation of their grandchildren, who

---

[1/] The Honorable Elizabeth Paek-Harris presided.

are the two minor children (**Children**) of Father and Petitioner SC (**Mother**).[2]  Following an August 28, 2020 evidentiary hearing, the Family Court denied Father's Post-Decree Motion.

On appeal, Father contends that the Order Denying Relief:  (1) infringed upon Father's fundamental parental rights, as protected by the due process clause of the Fourteenth Amendment to the United States Constitution; (2) failed to uphold "the special weight standard" imposed by Hawaii Revised Statutes (**HRS**) § 571-46.3(2), quoted infra; and (3) violated HRS § 578-16, quoted infra.  Father also challenges Findings of Fact (**FOFs**) 135, 140 through 143, 145, 146, and 149 of the Family Court's Findings of Fact and Conclusions of Law (**FOFs/COLs**), entered on January 29, 2021.

In Doe v. Doe, 116 Hawaiʻi 323, 172 P.3d 1067 (2007), the Hawaiʻi Supreme Court declared the state's grandparent visitation statute, HRS § 571-46.3, quoted infra, facially unconstitutional, because it did not include the "harm to the child" standard required by the right to privacy under article I, section 6 of the Hawaiʻi Constitution.  Id. at 336, 172 P.3d at 1080.  The court ruled that "proper recognition of parental autonomy in child-rearing decisions requires that the party petitioning for visitation demonstrate that the child will suffer significant harm in the absence of visitation before the family court may consider what degree of visitation is in the child's best interests."  Id. at 335-36, 172 P.3d at 1079-80.

We hold that Doe's harm-to-the-child standard applies in the circumstances of this case, where Father, as a custodial parent whose fitness has not been challenged, seeks to modify a visitation order entered in favor of non-parent third parties, i.e., Maternal Grandparents.  We further hold that Maternal Grandparents have satisfied the harm-to-the-child standard in the unique circumstances of this case, where the Family Court entered extensive findings of fact that the Children would suffer significant harm if the visitation order were modified as requested.  The Family Court also correctly concluded that the

---

[2]     Mother is now deceased, Father has remarried, and Father's wife (**Adoptive Mother**) has adopted the Children.

weight of the evidence on Maternal Grandparents' side was sufficient to overcome the rebuttable presumption in favor of Father's request to modify visitation.  See Troxel v. Granville, 530 U.S. 57, 68-70 (2000) (plurality opinion).

Father's remaining arguments, to the extent not waived, are without merit.  Accordingly, we affirm the Order Denying Relief.

## I.  Background

The following FOFs by the Family Court, among others, are unchallenged on appeal and are thus binding on the parties and this court, see State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019):

1.    Father and [Mother] were married but separated in 2011.

2.    Father and Mother divorced pursuant to the Decree of Dissolution of Marriage entered in the District Court El Paso County, Colorado [(the **Colorado Court**)] on January 14, 2016 ("Decree").

3.    The parties have two (2) minor children . . . (collectively "the children").

4.    The Colorado Court entered the following findings as set forth in the Decree:

. . . .

Mother will enjoy sole decision making, primary residential responsibilities, or, in other words, sole custody for [the children].  She may determine the terms of parenting time between the children of the marriage and their father.

5.    Subsequently, Mother tragically died in a traffic accident [in October] 2017.

. . . .

7.    On March 6, 2018, Maternal Grandparents filed a Motion for Grandparent Visitation in Colorado ("3/6/18 Motion for Grandparent Visitation").

. . . .

10.   On October 3, 2018, the Colorado Court entered its Order Re Motion for Grandparent Visitation ("10/3/18 Visitation Order").

11.   The Colorado Court entered the following findings in the 10/3/18 Visitation Order:

. . . .

c.     The Colorado Court must begin with the presumption that the parent's determination of grandparent visitation is in the best interest of the children.  That presumption is rebuttable with facts and evidence which establish by clear and convincing evidence that (a) the parent is unfit or (b) the parent's determination of parenting time is not in the best interest of the children.

d.     There have been no allegations of unfitness of Father. . . .

. . . .

f.     Following the parents' separation [in 2011], Mother was the primary parent and exercised the majority of the parenting time.

g.     Mother was awarded sole decision-making responsibility for the children, with parenting time for Father as determined by Mother . . . .

. . . .

j.     Father's parenting time was limited before Mother's death [in October 2017].

k.     Maternal Grandparents had been very involved in the children's lives since between 2013 and 2017, and had the children two (2) to three (3) days per week during the school year and five (5) times per week during the summer.

l.     Father was living in Ohio or Hawaii during this period and had limited contact with the children.

. . . .

r.     This is an unusual situation.

s.     Mother is deceased, and the children are presently with Father, who had limited contact with them prior to Mother's death.

t.     Maternal Grandparents have played a very important role in the children's lives and provide an essential link to the maternal side of the family.

u.     The children are still grieving.  Father has placed the children in therapy and they are improving.  However, it doesn't follow that Maternal Grandparents' contact with the children should be limited.

v.     Maternal Grandparents need to be an active presence in the children's lives.  They have always been in the children's lives and they are a link to the maternal side of the family.  Contact with Maternal Grandparents is necessary for the emotional health of the children and to aid in the grieving process.

. . . .

x.     Father is providing stability for the children and Maternal Grandparents are an essential part of their emotional health.

4

> y.    The Colorado Court finds that Maternal
> Grandparents have met their burden by clear and
> convincing evidence in that Father's determination of
> grandparent visitation is not in the children's best
> interests and that their request for grandparent
> visitation is in the children's best interests.
>
>                . . . .

(Footnotes omitted.)

The Family Court concluded that the Colorado Court, in entering the 10/3/18 Visitation Order, had considered and applied the United States Supreme Court's decision in Troxel, 530 U.S. 57, as well as the relevant statutes and case law in Colorado, "when it entered findings that the children would suffer significant harm in the absence of visitation with Maternal Grandparents before it considered what degree of visitation was in the children's best interests."  The Colorado Court granted Maternal Grandparents the following grandparent visitation schedule, subject to certain conditions and contingencies:  one week in the spring from March 17 to March 23 each year; one week for Christmas from December 30 to January 5 each year; and two weeks in the summer from July 1 to July 14 each year.  Father was to "deliver and receive the minor children from Maternal Grandparents at the departure and arrival gates at the airport in Hawaii."  Maternal Grandparents were granted visitation "in Hawaii unless Maternal Grandmother or Maternal Grandfather are able to travel with the minor children to and from Colorado."

There is no evidence in the record that the 10/3/18 Visitation Order was ever appealed in Colorado.  The Family Court concluded that the 10/3/18 Visitation Order was a valid and enforceable order.

On February 25, 2020, Father registered the 10/3/18 Visitation Order and other documents from the Colorado Court, in the Family Court, pursuant to HRS § 583A-305.  On the same day, Father filed the Post-Decree Motion seeking to modify the 10/3/18 Visitation Order by restricting Maternal Grandparents' visitation with the Children to "where the [C]hildren reside[,]" i.e., Hawaiʻi.  Father asserted in the Post-Decree Motion that the change in visitation was appropriate because:  (a) "[t]he [C]hildren have resided in the [S]tate of Hawaii for over 2

years"; and (b) "[d]uring [the Children's] last visit with [Maternal Grandparents, Maternal Grandparents] failed to return the children in a timely manner pursuant to the court order creating a lot of panic and confusion for the [C]hildren." Father also requested that telephone visits between Maternal Grandparents and the Children "be scheduled around the [C]hildren[']s activities because it's become difficult for the [C]hildren to comply during the court ordered hours and the [C]hildren do not want to stay on the phone for a whole hour." Further, Father contended that Hawaiʻi should have jurisdiction in this matter because: (a) the Children have resided in Hawaiʻi for over two years; (b) "[b]oth parents and all information regarding [the Children's] care and well being exist here in Hawaii"; and (c) Colorado is an inconvenient forum.

On April 28, 2020, the Colorado Court communicated with the Family Court pursuant to HRS § 583A-110, as reflected in the Family Court's "Record of Communication Between Courts," filed on May 6, 2020. The Colorado Court stated that it believed that Hawaiʻi has home state jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act (**UCCJEA**), and that Colorado no longer has continuing, exclusive jurisdiction, as no party resides in Colorado. The Colorado Court informed the Family Court that it was relinquishing jurisdiction to Hawaiʻi. The Family Court stated that jurisdiction would be in Hawaiʻi under the UCCJEA, but that the presiding judge would further address the matter at the hearing.

On May 21, 2020, the Family Court held the first hearing on Father's Post-Decree Motion. At the hearing, the court found and ordered, among other things, that Hawaiʻi has jurisdiction under the UCCJEA, and the hearing would be continued to July 8, 2020, to allow the parties to mediate prior to proceeding with the Post-Decree Motion.[3] Mediation was unsuccessful and, at a July 8, 2020 hearing, the Family Court

_____

[3] FOF 25 states that "Colorado no longer had continuing, exclusive jurisdiction as none of the parties resided in the State of Colorado, Colorado relinquished jurisdiction, Father asserted Hawaii had jurisdiction as he and the [C]hildren resided in Hawaii, and Maternal Grandparents did not contest Hawaii jurisdiction."

ordered that the hearing be continued to August 28, 2020, for an extended evidentiary hearing. The parties agreed to modify Maternal Grandparents' telephone/video visits to: (a) telephone visits every other Sunday starting July 12, 2020, from 3-4 p.m., and (b) video visits every other Sunday starting July 19, 2020, from 3-4 p.m.

On August 28, 2020, the Family Court held the extended evidentiary hearing on Father's Post-Decree Motion. Father, Adoptive Mother, and a Hawaiʻi-licensed therapist testified on behalf of Father. Two of Maternal Grandparents' Colorado family members, as well as maternal grandmother TG, testified for Maternal Grandparents. Multiple exhibits were received into evidence.

On September 18, 2020, the Family Court entered the Order Denying Relief, and on January 29, 2021, the Family Court filed the FOFs/COLs. The FOFs stated in part:

> 40. Father's request does not constitute such a change in circumstances that modification of the valid and enforceable 10/3/18 Visitation Order is in the best interests of the children.
>
> 41. At the time of the entry of the valid and enforceable 10/3/18 Visitation Order, the children were already residing in Hawaii.
>
> 42. The fact that the children lived in Hawaii longer than they had at the time of the valid and enforceable 10/3/18 Visitation Order is not a change in circumstances such that modification of the valid and enforceable 10/3/18 Visitation Order is in the children's best interests.
>
> 43. As for Father's second basis for requesting modification of the valid and enforceable 10/3/18 Visitation Order in which he claims that during Maternal Grandparents' last visit with the children in July 2019 they "failed to return the children in a timely manner pursuant to the court order creating a lot of panic and confusion for the children" - this also does not constitute a change in circumstances such that modifying their visits to be exercised only in Hawaii or their residential area with Maternal Grandparents would be in the children's best interest.
>
> . . . .
>
> 53. There was good cause for the delay in Maternal Grandparents' untimely return of the children to Father in Hawaii in July 2019.
>
> 54. During Maternal Grandparents' visit with the children in July 2019 in Colorado, Maternal Grandmother notified Father on July 13, 2019 that she may need to delay

7

her flight with the children to return to Hawaii on July 14, 2019 due to an unexpected medical emergency where she was admitted into the hospital with an acute diverticuli flare up.

55. In the same email on July 13, 2019, Maternal Grandmother also notified Father that (a) the children were fine and at home with Maternal Grandfather, (b) she tried to switch the flights so Maternal Grandfather could travel with the children back to Hawaii instead of herself, but the airlines would not allow her to transfer her ticket to Maternal Grandfather, and (c) she should be released that day but would need to wait a few days to be on oral antibiotics before flying.

. . . .

58. Father unreasonably demanded that Maternal Grandmother return the children as originally planned without any justifiable reason.

. . . .

62. Maternal Grandmother returned the children to Father in Hawaii on July 18, 2019.

. . . .

64. There was an unexpected, unintentional and unforeseen change in circumstances that caused a slight four (4) day delay in Maternal Grandparents' timely return of the children to Father in July 2019.

65. Maternal Grandparents made their best effort to return the children to Father as soon as practically possible.

66. Notwithstanding, Father filed a complaint for custodial interference with the Honolulu Police Department ("HPD") against Maternal Grandparents on July 14, 2019 that was unwarranted and unnecessary.

. . . .

68. Father also contacted the local sheriff's department in Colorado to enforce the valid and enforceable 10/3/18 Visitation Order, and requested the sheriffs in Colorado to check on the children at Maternal Grandparents' home, even though he received detailed notice from Maternal Grandparents regarding the delay in the return of the children to Father in Hawaii and that the children were safe.

69. There was no reason for Father to believe that the children were not safe.

70. The only plausible reason for Father to have responded in the unreasonable manner that he did was to create an unfair advantage for him to seek modification of the valid and enforceable 10/3/18 Visitation Order, which he had repeatedly been attempting to do unsuccessfully since the Colorado Court entered it.

71. Father's actions subjected the children to unnecessary harm and conflict by involving the sheriff's department in Colorado.

8

. . . .

114. Father is married to [Adoptive Mother].

115. [Adoptive Mother] legally adopted the children on May 23, 2018.

. . . .

125. The Court did not find Father and [Adoptive Mother's] testimony credible.

126. Maternal Grandparents are elderly and for them to travel will become more difficult for them as they continue to age.

127. The children are getting older and for them to travel will become easier for them in the future.

128. The valid and enforceable 10/3/18 Visitation Order states that when the children are older and Father believes they can travel with an airline escort, they will no longer need to travel with Maternal Grandparents.

129. Maternal Grandparents and Mother's family are the only ties and connection the children have to their Mother, now deceased, who was also once their primary caretaker.

130. Maternal Grandparents had substantial and emotional ties to the children throughout their life with Mother until Father assumed custody after Mother passed away three (3) years ago.

131. Maternal Grandparents' relationship with the children goes beyond having a mere positive influence on them.

132. The children will suffer significant harm in the absence of visitation with Maternal Grandparents in Colorado.

133. Colorado was the children's home where they lived with Mother and were raised for most of their life before they moved to Hawaii a few years ago.

134. Most of the children's extended family on Mother's side, including one (1) of their half-siblings reside in Colorado.

135. The children's other half-sibling lives in Texas, but visits Colorado. Maternal Grandparents do not have authority to travel to Hawaii with the children's half-sibling who lives in Texas.

. . . .

138. Serious harm would result to the children given Father's motivation to limit and restrict Maternal Grandparents' visits with the children to Hawaii only.

139. The level of harm is of the magnitude that justifies overruling Father's proposed request to modify the valid and enforceable 10/3/18 Visitation Order restricting the location of the visits to Hawaii.

140. Father and [Adoptive Mother] are using the children as pawns based on their own personal conflict and resentment towards Mother's family in which the children should not suffer as a result.

141. Father and [Adoptive Mother] are not acting out of the best interests of the children, but instead, seek to advance their own personal agenda by using the children against Maternal Grandparents and attempting to restrict their visits to Hawaii only.

142. Father and [Adoptive Mother] are attempting to diminish the relationship between the children and Maternal Grandparents as opposed to supporting and maintaining a relationship between them.

143. There was a history of domestic violence in the relationship between Mother, the children and Father in which Father was the perpetrator.

. . . .

146. Father's history of domestic violence against Mother and [younger daughter] has caused some of the tension and conflict between Father and Maternal Grandparents.

147. The conflict escalated when [Adoptive Mother] legally adopted the children, and injected herself in the middle of communications between the children and Maternal Grandparents.

148. Due to the growing conflict between Father, [Adoptive Mother] and Maternal Grandparents, Father is attempting to sever the children's ties with Maternal Grandparents and Mother's family.

149. Father is not acting in the best interests of the children in attempting to sever this critical relationship . . . .

150. Given the strong and close relationship and bond between Maternal Grandparents and the children, and Father's motivation to sever ties between the children and Maternal Grandparents due to the personal conflict between him, [Adoptive Mother] and Maternal Grandparents, the overall weight of the evidence on Maternal Grandparents' side is sufficient to overcome any rebuttable presumption in favor of Father's request to modify visitation.

151. There is clear and convincing evidence that Maternal Grandparents are acting in the best interests of the children.

152. There is clear and convening evidence that modifying the valid and enforceable 10/3/18 Visitation Order to limit Maternal Grandparents' visitation would be harmful to the children.

153. It is in the best interests of the children to enforce the provisions of the valid and enforceable 10/3/18 Visitation Order.

(Footnotes omitted.)

## II. Discussion

### A. Father's Parental Rights

Father contends that the Family Court infringed upon his fundamental parental rights, as protected by the due process clause of the Fourteenth Amendment, "simply because [the Family Court] believes a 'better' decision could be made." In this regard, Father argues that FOFs 145 and 146 are not supported by substantial evidence.

FOFs 143 through 146, as well as FOF 154a, concern Father's history of domestic violence. The Family Court found the following:

> 143. There was a history of domestic violence in the relationship between Mother, the children and Father in which Father was the perpetrator.
>
> 144. The children's grief counselor, Ms. Bagford, states in her letter dated February 22, 2018 that she worked with [younger daughter] weekly since August 2017 on "feeling identification and regulation, psychoeducation around domestic violence and safety as well as work around grief and loss."
>
> 145. Further, in the parties' divorce case filed earlier in FC-D No. 13-1-6897, prior to the parties filing for divorce in Colorado, the Hawaii Family Court entered the following findings in paragraph 1 of its "Order Denying Plaintiff's Motion for Pre-Decree Relief Filed May 28, 2013 and Granting in Part and Denying in Part Defendant's Motion for Pre-Decree Relief Filed July 12, 2013" [(**August 30, 2013 Order**)]:
>
> > Viewed from the standpoint of the best interests of the children, the Court finds that an award of sole physical custody of the minor children to MOTHER is in the children's best interests. The Court awards each of the parties joint legal custody of the minor children. The children have resided with MOTHER in Colorado since December, 2012; the Court finds that MOTHER has been the primary caregiver for the children over the majority of their lives. **FATHER has failed to rebut the Court's finding that he engaged in domestic violence against MOTHER in January, 2013** and therefore, an award of legal and physical custody to MOTHER is appropriate (emphasis added).
>
> 146. Father's history of domestic violence against Mother and [younger daughter] has caused some of the tension and conflict between Father and Maternal Grandparents.
>
> . . . .
>
> 154. In addition to all of the factors already noted herein, the Court enters the following additional factors considered in applying the best interests of the children standard enumerated in HRS §571-46(b):

11

> a.    As noted herein, there is a history of domestic violence by Father and against Mother, where one of the children, [younger daughter] was also involved, which also included emotional abuse.

(Footnotes omitted.)

Findings of fact are reviewed under the clearly erroneous standard and will not be overruled unless:

> (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake had been made. 'Substantial evidence' is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

LC v. MG, 143 Hawaiʻi 302, 310, 430 P.3d 400, 408 (2018) (quoting Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006)).

We first note that Father does not challenge FOFs 143 144, and 154a, which are thus binding on this court.  Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435.  Regarding FOFs 145 and 146, Father asserts generally that "no substantial evidence . . . verifies the claims of abuse; all accusations are unfounded and clearly erroneous."

In FOF 145, the Family Court quotes from the August 30, 2013 Order entered by the Family Court in the parties' separate divorce proceeding, which was initiated in Hawaiʻi in 2013 before the filing of the divorce proceeding in Colorado.[4]  The August 30, 2013 Order was entered into evidence as Maternal Grandparents' Exhibit 23 at the August 28, 2020 evidentiary hearing.  At that time, Father asserted that Exhibit 23 was "irrelevant" and also stated, "I don't disagree that it's a court order, but it wasn't due to domestic violence that it was filed . . . ."  There is no indication in the record, however, that Father ever challenged the Family Court's domestic violence finding by appealing from a final order in the Hawaiʻi divorce proceeding.  Nor does Father contend that FOF 145 misquotes the August 30, 2013 Order.  We thus conclude there is substantial evidence to support FOF 145, and we are not left with a definite and firm conviction that a mistake has been made.

---

[4]    It appears that the Hawaiʻi divorce proceeding was dismissed in 2014.

FOF 146 appears to be based on FOFs 143 through 145, which concern Father's history of domestic violence, and FOFs 118 through 121, and 154bb and 154ii, which concern the conflict between Father and Adoptive Mother on one side, and Maternal Grandparents and Mother's family on the other. Father has not challenged any of these FOFs supporting FOF 146, except for FOF 145, which we have concluded is not clearly erroneous. Based on our review of the record, we conclude there is substantial evidence to support FOF 146, and we are not left with a definite and firm conviction that a mistake has been made.

Father also argues more generally that he has not been found to be an "unfit" parent, and the Order Denying Relief infringes on his fundamental parental right to make child-rearing decisions.

The Hawaiʻi Supreme Court recently reiterated:

> [A] parent's right to the "care, custody and control" of his or her child is a fundamental liberty interest protected by the United States Constitution. Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) ("[T]he interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court."). This court has also recognized that independent of the United States Constitution "parents have a substantive liberty interest in the care, custody, and control of their children protected by the due process clause of article 1, section 5 of the Hawaiʻi Constitution. . . ." In re Doe, 99 Hawaiʻi 522, 533, 57 P.3d 447, 458 (2002).

DJ v. CJ, 147 Hawaiʻi 2, 17, 464 P.3d 790, 805 (2020) (quoting AC v. AC, 134 Hawaiʻi 221, 233, 339 P.3d 719, 731 (2014)); see AA v. BB, 139 Hawaiʻi 102, 109, 384 P.3d 878, 885 (2016).

In Troxel, the United States Supreme Court affirmed the Washington Supreme Court's judgment that a Washington visitation statute violated the United States Constitution. The plurality opinion found that the Washington statute was "breathtakingly broad" because its language effectively permitted "any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review." 530 U.S. at 67. The plurality also emphasized the importance of the presumption "that fit parents act in the best interest of their children[,]" and reasoned that the trial court's visitation order contravened that presumption in part

13

because it accorded no "special weight" to the parent's determination of her children's best interests. Id. at 68-69. The plurality further observed that the trial court's findings demonstrated "nothing more that a simple disagreement between [the trial court] and [the parent] concerning her children's best interests." Id. at 72. However, neither the plurality opinion nor the other five opinions in Troxel defined the scope of the parental right with respect to visitation decisions. See AA, 139 Hawaiʻi at 109, 384 P.3d at 885 (construing Troxel).

In Doe, the Hawaiʻi Supreme Court considered the constitutionality of HRS § 571-46.3,[5] which allowed for a grandparent to petition for reasonable visitation of their grandchild, and allowed the court to grant the petition so long as Hawaiʻi was the child's home state and reasonable visitation was in the child's best interests. 116 Hawaiʻi at 325, 172 P.3d at 1069. Applying strict scrutiny, the supreme court concluded that "proper recognition of parental autonomy in child-rearing decisions requires that the party petitioning for visitation demonstrate that the child will suffer significant harm in the absence of visitation before the family court may consider what degree of visitation is in the child's best interests." Id. at 335–36, 172 P.3d at 1079–80. The court held that HRS § 571-46.3

---

[5]      HRS § 571-46.3 (2018) states:

> **Grandparents' visitation rights; petition; notice; order.** A grandparent or the grandparents of a minor child may file a petition with the court for an order of reasonable visitation rights. The court may award reasonable visitation rights provided that the following criteria are met:
>
> (1)      This State is the home state of the child at the time of the commencement of the proceeding; and
>
> (2)      Reasonable visitation rights are in the best interests of the child.
>
> No hearing for an order of reasonable visitation rights under this section shall be had unless each of the living parents and the child's custodians shall have had due notice, actual or constructive, of the allegations of the petition and of the time and place of the hearing thereof.
>
> An order made pursuant to this section shall be enforceable by the court, and the court may issue other orders to carry out these enforcement powers if in the best interests of the child.

was facially unconstitutional because it did not include the "harm to the child" standard required by the right to privacy under article I, section 6 of the Hawaiʻi Constitution. Id. at 336, 172 P.3d at 1080. "Thus, a parent's fundamental right to direct the upbringing of his or her child was implicated 'where a nonparent third party petitione[d] for visitation,' and the State could not interfere with the parent's decision absent a finding that the parent's decision to deny access to the child would result in harm to the child." AA, 139 Hawaiʻi at 111, 384 P.3d at 887 (construing Doe).

We hold that Doe's harm-to-the-child standard applies in these circumstances, where Father, as a custodial parent whose fitness has not been challenged, seeks to modify a visitation order entered in favor of non-parent third parties, i.e., Maternal Grandparents. We further hold that Maternal Grandparents have satisfied the harm-to-the-child standard in the unique circumstances of this case, where the Family Court entered extensive findings of fact that the Children would suffer significant harm if the 10/3/18 Visitation Order were modified as requested. The Family Court also concluded, in compliance with the Troxel plurality, that the weight of the evidence on Maternal Grandparents' side was sufficient to overcome the rebuttable presumption in favor of Father's request to modify visitation. The relevant FOFs include the following, none of which Father challenges on appeal:

> 129. Maternal Grandparents and Mother's family are the only ties and connection the children have to their Mother, now deceased, who was also once their primary caretaker.
>
> 130. Maternal Grandparents had substantial and emotional ties to the children throughout their life with Mother until Father assumed custody after Mother passed away three (3) years ago.
>
> 131. Maternal Grandparents' relationship with the children goes beyond having a mere positive influence on them.
>
> 132. The children will suffer significant harm in the absence of visitation with Maternal Grandparents in Colorado.
>
> 133. Colorado was the children's home where they lived with Mother and were raised for most of their life before they moved to Hawaii a few years ago.

15

134. Most of the children's extended family on Mother's side, including one (1) of their half-siblings reside in Colorado.

. . . .

138. <u>Serious harm would result to the children given Father's motivation to limit and restrict Maternal Grandparents' visits with the children to Hawaii only</u>.

(Emphasis added.)

These FOFs are binding on this court and support the Family Court's mixed conclusions of fact and law in FOFs 139 and 150 that, respectively: (1) "[t]he level of harm is of the magnitude that justifies overruling Father's proposed request to modify the valid and enforceable 10/3/18 Visitation Order restricting the location of the visits to Hawaii"; and (2) "the overall weight of the evidence on Maternal Grandparents' side is sufficient to overcome any rebuttable presumption in favor of Father's request to modify visitation." Cf. Troxel, 530 U.S. at 72 (observing that the trial court's "slender findings" demonstrated "nothing more than a simple disagreement between [the trial court] and [the parent] concerning her children's best interests").

After determining that the Children would suffer significant harm if the 10/3/18 Visitation Order were modified as requested, the Family Court then considered and applied the factors enumerated in HRS § 571-46(b)[6] for determining the best

---

[6]    HRS § 571-46(b) (2018) states:

(b)  In determining what constitutes the best interest of the child under this section, the court shall consider, but not be limited to, the following:

(1)    Any history of sexual or physical abuse of a child by a parent;

(2)    Any history of neglect or emotional abuse of a child by a parent;

(3)    The overall quality of the parent-child relationship;

(4)    The history of caregiving or parenting by each parent prior and subsequent to a marital or other type of separation;

(5)    Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; provided that
(continued...)

interest of the child.  See Doe, 116 Hawaiʻi at 335–36, 172 P.3d at 1079–80.  Father does not dispute any of the Family Court's extensive findings on this subject, which support the court's conclusions in FOFs 153 and 156 that, respectively, "[i]t is in

---

6/(...continued)
this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

(6)  The physical health needs of the child;

(7)  The emotional needs of the child;

(8)  The safety needs of the child;

(9)  The educational needs of the child;

(10)  The child's need for relationships with siblings;

(11)  Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

(12)  Each parent's actions demonstrating that they separate the child's needs from the parent's needs;

(13)  Any evidence of past or current drug or alcohol abuse by a parent;

(14)  The mental health of each parent;

(15)  The areas and levels of conflict present within the family; and

(16)  A parent's prior willful misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor. Such willful misuse may be considered only if it is established by clear and convincing evidence, and if it is further found by clear and convincing evidence that in the particular family circumstance the willful misuse tends to show that, in the future, the parent who engaged in the willful misuse will not be able to cooperate successfully with the other parent in their shared responsibilities for the child. The court shall articulate findings of fact whenever relying upon this factor as part of its determination of the best interests of the child. For the purposes of this section, when taken alone, the voluntary dismissal of a petition for protection from abuse shall not be treated as prima facie evidence that a willful misuse of the protection from abuse process has occurred.

the best interests of the children to enforce the provisions of the valid and enforceable 10/3/18 Visitation Order[,]" and "[t]he best interests of the children do not justify modification."  The Family Court also made clear in COLs 6 and 7 that it relied on HRS § 571-46(a)(6) and (7)[7] and HRS § 571-46(b) in making its visitation decision.[8]  See Waldecker v. O'Scanlon, 137 Hawaiʻi 460, 375 P.3d 239 (2016) (cited by the Family Court in COL 11).

Accordingly, Father's argument that his parental rights were violated is without merit.

## B.  Grandparent Visitation Statute

Father contends that the Family Court erred "by failing to uphold the special weight standard specified in Paragraph 2 of [HRS §] 571-46.3."

As discussed above, HRS § 571-46.3, the grandparent visitation statute, was declared facially unconstitutional in Doe.  See 116 Hawaiʻi at 336, 172 P.3d at 1080.  Even if HRS § 571-46.3 had not been held unconstitutional, the statute would not have applied to Father's Motion for Post-Decree Relief, which sought modification of the Colorado Court's 10/3/18 Visitation

---

[7]    HRS § 571-46(a)(6) and (7) (2018) states, in relevant part:

> (a)  In actions . . . where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, . . . or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper.  In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:
>
> . . . .
>
> (6)    Any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change and, wherever practicable, the same person who made the original order shall hear the motion or petition for modification of the prior award;
>
> (7)    Reasonable visitation rights shall be awarded to parents, grandparents, siblings, and any person interested in the welfare of the child in the discretion of the court, unless it is shown that rights of visitation are detrimental to the best interests of the child[.]

[8]    Father does not challenge the validity of these provisions.

18

Order, entered pursuant to Colorado law. The Family Court did not err in not applying HRS § 571-46.3 to the Motion for Post-Decree Relief. Moreover, we ruled in Section A, supra, that the Family Court correctly concluded that the weight of the evidence on Maternal Grandparents' side was sufficient to overcome the rebuttable presumption in favor of Father's request to modify visitation.

Father also argues that FOFs 135, 140 through 142, and 149 (see supra) are "outside the scope of evidence." FOF 135 states in part that one of the Children's half-siblings lives in Texas. Maternal Grandmother testified that one of the Children's half-siblings lives with Grandparents in Colorado and the other half-sibling lives with his father in Colorado.[9] The record lacks substantial evidence to support the finding that one of Children's half-siblings lives in Texas, and that finding is thus clearly erroneous. However, this minor error was harmless in these circumstances and does not warrant relief. See, e.g., Dupree v. Hiraga, 121 Hawaiʻi 297, 320 n. 28, 219 P.3d 1084, 1107 n.28 (2009) (ruling that a clearly erroneous finding of fact was harmless); DL v. CL, No. CAAP-18-0000211, 2019 WL 968052 at *6 (Haw. App. Feb. 28, 2019) (SDO) (holding in a custody proceeding that "[m]inor errors in a court's findings that are harmless do not warrant relief").

FOFs 140 through 142 and 149 reflect the Family Court's findings regarding Father and Adoptive Wife's motivations in seeking to modify the 10/3/18 Visitation Order. These FOFs appear to be based on numerous other unchallenged findings, e.g., FOFs 49-75 and 116-24, which describe instances of conflict between Father and Adoptive Wife on one side, and Maternal Grandparents and Mother's family on the other. See In re Doe, 107 Hawaiʻi 12, 19, 108 P.3d 966, 973 (2005) (explaining that appellate courts give due deference to the right of the trier of fact to draw reasonable inferences from the evidence adduced).

_____

[9] In the same testimony, Maternal Grandmother stated that two weeks earlier, the "El Paso County Courts" had awarded Grandparents additional visitation with the latter child. In context, it appears that Maternal Grandmother was referring to El Paso County, Colorado rather than El Paso County, Texas.

The Family Court also "did not find Father and [Adoptive Mother's] testimony credible," a determination that we will not disturb on appeal.  See Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360.  Based on our review of the record, we conclude there was credible evidence of sufficient quality and probative value to enable a person of reasonable caution to support FOFs 140 through 142 and 149, and we are not left with a definite and firm conviction that a mistake has been made.

**C.  Effect of Adoption**

Father argues that as a result of the adoption of the Children by Adoptive Mother, under HRS § 578-16,[10] Maternal

_____

[10]    HRS § 578-16 (2018) provides in part:

> **Effect of adoption.**  (a)  A legally adopted individual shall be considered to be a natural child of the whole blood of the adopting parent or parents as provided in the Uniform Probate Code, relating to the descent of property.
>
> (b)  The former legal parent or parents of an adopted individual and any other former legal kindred shall not be considered to be related to the individual as provided in the Uniform Probate Code except as provided in this section.
>
> (c)  An adopted individual and the individual's adopting parent or parents shall sustain towards each other the legal relationship of parents and child and shall have all the rights and be subject to all the duties of that relationship . . . .
>
> (d)  Except as provided in subsection (e), all legal duties and rights between the individual and the individual's former legal parent or parents shall cease from the time of the adoption; provided that if the individual is adopted by a person married to a legal parent of the individual, the full reciprocal rights and duties which theretofore existed between the legal parent and the individual, and the rights of inheritance as between the individual and the legal parent and the legal relatives of the parent, as provided in chapter 560, shall continue, notwithstanding the adoption, subject only to the rights acquired by and the duties imposed upon the adoptive parents by reason of the adoption.
>
> (e)  Notwithstanding subsections (b) and (d), if an individual is adopted before that individual attains the age of majority and:
>
> > (1)    The individual is adopted by a spouse of a natural parent of the individual; or
> >
> > (2)    The individual is adopted by a natural grandparent, aunt, uncle, or sibling of the
> >
> > (continued...)

Grandparents "no longer have any legal rights and duties" as to the Children.

Father did not raise this argument in the Family Court. "As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." County of Hawaii v. C & J Coupe Family Ltd., 119 Hawaiʻi 352, 373, 198 P.3d 615, 636 (2008) (quoting State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003)); see Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(iii).  Accordingly, Father's argument is deemed waived.

### III.  Conclusion

For the reasons discussed above, we affirm the "Order Re: [Father's] Motion and Declaration for Post-Decree Relief Filed 2/25/20," entered on September 18, 2020, in the Family Court of the First Circuit.

On the briefs:                          /s/ Lisa M. Ginoza
                                        Chief Judge
JC,
Self-represented
Respondent-Appellant                    /s/ Clyde J. Wadsworth
                                        Associate Judge

TG and AG,
Self-represented                        /s/ Sonja M.P. McCullen
Intervenors-Appellees                   Associate Judge

---

[10]/(...continued)
individual or the spouse of a natural grandparent, aunt, uncle, or sibling;

then for the purposes of interpretation or construction of a disposition in any will, trust, or other lifetime instrument, whether executed before or after the order of adoption, and for purposes of determining heirs at law, the rights of the adopted individual and the individual's descendants with respect to the individual's natural family shall not be affected by the adoption, and they shall be included in any determination of heirs or members of any class, unless specifically excluded by name or class.

. . . .